(126 P.3d 445)

No. 93,921

In the Matter of the Parentage of KATIE ANN SHADE, a minor child, by and through her next friend, VICKY L. SHADE, mother and natural guardian.

Opinion filed January 20, 2006.

*J.C. Gilroy, David J. Brown,* and *Kari Nelson,* of the Law Offices of David J. Brown, LC, of Lawrence, for appellant Vicky L. Shade.

*Marlin Johanning,* of Johanning Law Office, of Atchison, for appellee John C. Wistuba.

Before BUSER, P.J., MALONE and CAPLINGER, JJ.

CAPLINGER, J.: In this paternity action, Vicky L. Shade appeals the district court's determination that the presumption of John C. Wistuba's paternity of the couple's child, Katie Ann Shade was rebutted by the dismissal of a previous paternity action. Shade further argues the district court erred in applying the equitable doctrines of laches and clean hands to the facts of this case and improperly calculated the amount of child support pursuant to K.S.A. 2004 Supp. 38-1121(e).

We hold that the presumption of paternity which was established when Wistuba voluntarily agreed to the placement of his name on the child's birth certificate was not rebutted by clear and convincing evidence or by a court decree establishing paternity of the child by another man, as required by K.S.A. 38-1114(b). We further conclude that neither the equitable doctrine of laches nor the eq-

uitable doctrine of clean hands applied to the facts herein, and the district court erred in considering either of these doctrines in calculating its award of child support. In light of these errors, we reverse and remand this case to the district court with directions to recalculate the child support award pursuant to K.S.A. 2004 Supp. 38-1121(e).

*Background*

On August 25, 1986, Shade's daughter, Katie, was born. Wistuba was listed as Katie's father on the application for birth certificate and on the birth certificate issued for Katie. Shade and Wistuba were never married, but they lived together off and on for about a year after Katie's birth. During that time, Wistuba provided the sole support for Shade and her daughter. Wistuba admitted he informed members of the public, including family and friends, that he was Katie's father for at least the first 6 months of Katie's life. Shade and Wistuba permanently separated when Katie was about a year old, and Wistuba stopped providing financial assistance for Katie's care.

In 1990, Shade applied for assistance from the Kansas Department of Social and Rehabilitation Services (SRS), and SRS filed a paternity suit against Wistuba in Jefferson County District Court. SRS also sought child support from Wistuba. Wistuba contested paternity and requested genetic testing. The district court initially entered an order dismissing the case with prejudice on May 15, 1990, but 10 days later entered an amended order dismissing the action without prejudice.

Shade filed her initial petition for determination of parentage on January 28, 2003, and an amended petition March 20, 2003. Shade requested $24,373.11 in actual expenses incurred in raising Katie. Wistuba answered, claiming he had "no reason to dispute" certain assertions in Shade's petition, including the assertion that he was Katie's presumed father. Nevertheless, Wistuba contemporaneously moved to dismiss, arguing the current paternity action was precluded by the dismissal with prejudice of the 1990 action. He further argued it was not in Katie's best interest to determine parentage at that stage in her life.

Following an October 2003 hearing, the district court denied Wistuba's motion to dismiss and ordered the parties to submit to genetic testing. However, on January 22, 2004, the court *sua sponte* dismissed the case without prejudice for "[w]ant of prosecution or activity." On March 18, 2004, the district court granted Shade's motion to reinstate the case. The court subsequently determined that because Wistuba failed to obtain genetic testing, he was presumed to be Katie's father. The court ordered Wistuba to pay 2 years of back child support of $2,928 and monthly child support of $128 beginning April 1, 2004.

On March 25, 2004, the district court set aside that order on the assurance that the parties would submit to genetic testing. Following testing and a subsequent August 31, 2004, hearing, the district court determined Wistuba was Katie's father. However, the court did not order current child support because, by that time, Katie was no longer a minor. With respect to paternity, the court determined the initial presumption of paternity arose when Wistuba agreed to have his name placed on Katie's birth certificate. Nevertheless, the court found that presumption was overcome when the 1990 paternity action filed by SRS was dismissed for lack of cooperation by Shade. The court further concluded the presumption of paternity was not reinstated until 2004 when the genetic testing confirmed Wistuba's paternity and that the doctrines of laches and "unclean" hands applied to this case. The court held it had discretion to award all or part of the expenses incurred in raising Katie. The court awarded Shade $13,008, of which $3,072 consisted of back child support.

Shade appeals, arguing the district court erred in concluding the presumption of paternity was nullified by the dismissal of the 1990 case. Shade further argues the district court erred in applying the equitable doctrines of laches and clean hands to the facts of this case. She thus concludes the district court improperly calculated the amount of child support pursuant to K.S.A. 2004 Supp. 38-1121(e).

*Presumption of paternity*

The district court correctly held that a presumption of paternity arose when Wistuba agreed to place his name on Katie's birth certificate shortly after she was born. The court nevertheless concluded that the presumption was nullified by the dismissal of the 1990 paternity action.

Where the district court has made findings of fact as a basis for its conclusions of law, an appellate court must determine whether the findings of fact are supported by substantial competent evidence. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). Substantial evidence is such relevant evidence that a reasonable person would accept as sufficient to support a conclusion. 275 Kan. at 318. The appellate court then considers whether the findings of fact are sufficient to support the district court's conclusions of law. 275 Kan. at 318. Appellate review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

K.S.A. 38-1114(a)(4) states that a man is presumed to be the father of a child if he "notoriously or in writing recognizes paternity of the child . . . ." However, such presumption may be rebutted "by clear and convincing evidence [or] by a court decree establishing paternity of the child by another man . . . ." K.S.A. 38-1114(b). The date the presumption arises is significant because K.S.A. 2004 Supp. 38-1121(e) provides that the court shall award reimbursement for all or part of the expenses of raising the child "from at least the date the presumption [of paternity] first arose . . . ."

Shade agrees that the district court correctly determined the presumption of paternity arose when Wistuba agreed to have his name as the father placed on Katie's birth certificate. However, she does not agree with the court's conclusion that the presumption was nullified or rebutted when the 1990 paternity case was dismissed because of Shade's noncooperation in the paternity testing.

According to K.S.A. 38-1114(b), a presumption of paternity must be rebutted by clear and convincing evidence or by a court decree establishing paternity in another man. The record reveals that the

district court was not presented with any evidence from the 1990 case establishing paternity in anyone other than Wistuba. Nor did the court find that Wistuba was not Katie's father. Thus, there was no evidence, much less clear and convincing evidence, to rebut the presumption of paternity. Further, we note that "[t]he stated purpose of the [Kansas Parentage] Act[, K.S.A. 38-1110 *et seq.*,] is to ensure that the legal obligations, rights, privileges, duties, and obligations incident to . . . the father/child relationship are carried out." *In re Marriage of Ross*, 245 Kan. 591, 595, 783 P.2d 331 (1989); see K.S.A. 38-1111. It was not in Katie's best interest to undermine the presumption of paternity absent any credible suggestion of paternity in another man. See *In re Marriage of Phillips*, 274 Kan. 1049, 1057-58, 58 P.3d 680 (2002). "As the court stated in *Ross*, the bastardization of the child[ ] would achieve none of the purposes of the Act. [Citation omitted.]" 274 Kan. at 1058.

Accordingly, we hold the district court erred in finding that the presumption of paternity created when Wistuba voluntarily consented to the placement of his name on the child's birth certificate was rebutted by any action or inaction of Shade in the 1990 paternity action brought by SRS. We remand to the district court for a recalculation of support pursuant to K.S.A. 2004 Supp. 38-1121(e) based upon the finding that the presumption of paternity arose at the time Wistuba consented to the inclusion of his name on the birth certificate.

*Calculation of support pursuant to K.S.A. 2004 Supp. 38-1121(e)*

Our conclusion that the case must be remanded for a recalculation of child support pursuant to K.S.A. 2004 Supp. 38-1121(e) requires that we consider a further issue raised by Wistuba. He argues that even if the district court erred in finding the presumption of paternity was rebutted in 1990 and reinstated in 2004, the district court nevertheless properly calculated support pursuant to 38-1121(e).

K.S.A. 2004 Supp. 38-1121(e) provides that "the court *shall* award an additional judgment to reimburse all or part of the expenses of support and education of the child *from at least the date the presumption [of paternity] first arose to the date the order is*

*entered . . . . "* (Emphasis added.) Here, the district court determined it need not award support from the date the presumption first arose (*i.e.*, at Katie's birth) because the court found the presumption was rebutted when the 1990 case was dismissed and was not reinstated until the genetic testing results proved Wistuba's paternity in 2004. Instead, the district court applied the subsequent discretionary language of K.S.A. 2004 Supp. 38-1121(e), which states the court "*may* award an additional judgment to reimburse the expenses of support and education of the child from the date of birth to the date the order is entered." (Emphasis added.) The district court reasoned that the statute gave it discretion as to whether to award support for expenses incurred prior to the date Wistuba's paternity was proved in 2004. Utilizing this discretion, the court awarded retroactive child support for 2 years calculated based on the minimum wage child support guidelines.

Wistuba suggests that even if this court determines the district court erred when it found the presumption of paternity was rebutted in 1990 and not reinstated until 2004, this court should nevertheless affirm the district court's award. He reasons that even though the imposition of an award was mandatory, the district court had the discretion to award all *or part* of the expenses of raising Katie pursuant to K.S.A. 2004 Supp. 38-1121(e).

The error in Wistuba's argument is that it ignores the district court's specific statement that it limited its award to a portion of the support incurred *for the 2 years prior to the reinstatement of the presumption*. While K.S.A. 2004 Supp. 38-1121(e) permits the court to award "all or part of the expenses of support and education of the child," it mandates that even if a portion of the expenses are awarded, the award must reflect expenses "from at least the date the presumption first arose to the date the order is entered."

The district court apparently based its partial support calculation upon what it termed its "general philosophy" in awarding retroactive child support. Prior to trial, the district judge informed the parties:

"[J]ust so the parties are aware, this is the Court's philosoph[y] on retroactive requests for what we call—what I call a mother's judgment or a 318b judgment . . . I generally limit that to two years based on minimum wage child sup-

port orders, so that's 2940 . . . , $2,940 is the most I will award on a mother's judgment . . . . I'm just say[ing] that my policies only go back two years, so that's generally my policy and I use minimum wage child support order because when we have . . . about four to five hundred paternity actions filed a year . . . to be able to spend enough time to litigate the cost of raising each child and then how much she's [to be] reimbursed for that child; I can't do. I cannot fit it into my schedule. So I go on minimum wage child support order [for] two years. That's my policy, but you can challenge it; take it up with the Court of Appeals and see what they say, but I just wanted to let you know my policy on that . . . ."

Following trial, the district court reiterated this explanation and further explained that it was relying upon an application of the laches doctrine to limit its award of retroactive child support to no more than 2 years based on the minimum wage child support guidelines, stating:

"[T]he Court has formulated certain rules, and I espoused this earlier, and despite th[e] fact that maybe if Laches was not affirmatively pled, it was certainly something the Court announce[d] or described to the parties early on as a philosophy of this Court. And so what the Court says is that in an effort to bring some sort of guidelines the Court generally looks back two years. Under the theory that is very difficult, especially if you're trying to look back many years to produce records. Although Ms. Shade has done a very remarkable job of providing $24,000 worth of expenses. But I think there needs to be some diligence on the party meaning to pursue a request of support. There's several reasons why. First of all, if they're going to expect reimbursement for those expenses, the party may— should have then the opportunity to look at the reasonableness of those expenses. For instance, if they're claiming medical expenses, they may be able to provide health care at a much lesser cost through their employer. They may be able to provide alternatives, like family watching a child instead of day care. They may want to have extended visits or participate in a lot of these things, pay for them, and even get credits against their child support by having extended visits or extended parenting time, or even shared residency if that situation were to arise. These are all reasons why . . . there needs to be some limit to how far we look back."

The district court further explained that it uses the minimum wage child support guidelines to calculate the amount of back child support "rather than get into a lot of litigation over determining exactly what the [parties'] incomes were retroactively . . . ."

Thus, for its own convenience, the district court applied a formula it apparently had applied in previous cases. While the court provided reasons for its philosophy, those reasons were not unique

to this case. Moreover, K.S.A. 2004 Supp. 38-1121(e) does not permit the court to limit the award in such a manner.

Shade presented evidence of the support she had provided for Katie from the date the presumption arose until the time of trial. In refusing to consider the evidence presented, the district court failed to uphold its obligation pursuant to K.S.A. 2004 Supp. 38-1121(e) to reimburse all or part of the expenses of support and education of the child from at least the date the presumption first arose to the date the order was entered.

On remand, the district court is directed to consider the evidence presented by Shade in calculating child support expenses and to recalculate support from the date the presumption of paternity arose, *i.e.*, the date Wistuba agreed to have his name placed on Katie's birth certificate, to the date the order was entered and to award all or part of *those* expenses, as mandated by K.S.A. 2004 Supp. 38-1121(e).

*Application of the doctrines of laches and clean hands*

Shade further claims the district court erroneously relied on her alleged noncooperation in the 1990 paternity action brought by SRS as a bar to her recovery of child support under the equitable doctrines of laches and clean hands.

*Laches*

The doctrine of laches is an equitable principle designed to bar stale claims. When a party neglects to assert a right or claim for an unreasonable and unexplained length of time, and the lapse of time and other circumstances cause prejudice to the adverse party, relief may be denied on the ground of laches. See *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 725, 840 P.2d 1107 (1992); *Capitol Fed'l Savings & Loan Ass'n v. Glenwood Manor, Inc.*, 235 Kan. 935, 938, 686 P.2d 853 (1984). The district court's application or denial of the doctrine of laches is reviewed for an abuse of discretion. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 388, 22 P.3d 124 (2001).

As Shade correctly points out, laches is an affirmative defense that must be pled in a party's responsive pleading. K.S.A. 2004

Supp. 60-208(c). If an affirmative defense is not pled, it is waived. See *Garden Nat'l Bank v. Cada*, 241 Kan. 494, 498-99, 738 P.2d 429 (1987). Shade argues that because Wistuba failed to plead laches, and instead raised the doctrine at trial, the district court erred in applying the doctrine in this case.

At trial, Shade contemporaneously objected to the consideration of a laches defense because it was not included in Wistuba's responsive pleading. In overruling Shade's objection, the district court stated it had considered a "laches type argument" to be applicable "early on" in the case and had given notice to the parties prior to trial at the hearing on the motion to dismiss that it would consider a laches argument.

Relying on this statement by the district court, Wistuba points out that the reason affirmative defenses must be pled is to prevent against unfair surprise at trial. He reasons that there was no surprise here because the district court announced at trial that it had considered a laches defense from "early on." Wistuba also claims to have "orally pled" the affirmative defense of laches at trial.

We do not find any indication in the record that the district court *sua sponte* notified the parties that it intended to consider the laches doctrine in this case. Nevertheless, we conclude we need not determine whether Wistuba timely asserted a laches defense, as the defense is not available to Wistuba, regardless of when it was raised.

Our Supreme Court has held that defendants in child support actions may not invoke the defense of laches as a bar to the enforcement of moral and legal obligations to their minor children. The rights of the latter are not to be waived by the inaction and passive acquiescence on the part of the mother. See *Strecker v. Wilkinson*, 220 Kan. 292, 297-99, 552 P.2d 979 (1976); *Peters v. Weber*, 175 Kan. 838, 844, 267 P.2d 481 (1954).

Thus, we hold that to the extent the district court relied upon the doctrine of laches in determining its award of child support, the district court erred. On remand, the district court is directed to recalculate the support owed without consideration of the equitable doctrine of laches.

## Clean hands

Shade further claims the district court improperly relied on hearsay evidence when it found she had "unclean hands" because she did not cooperate with the first paternity test in 1990.

The doctrine of clean hands is applied sparingly, in very limited situations:

"The application of the clean hands doctrine is subject to certain limitations. Conduct which will render a party's hands unclean so as to deny him access to a court of equity must be willful conduct which is fraudulent, illegal or unconscionable. [Citation omitted.] Furthermore, the objectionable misconduct must bear an immediate relation to the subject-matter of the suit and in some measure affect the equitable relations subsisting between the parties to the litigation and arising out of the transaction. [Citation omitted.]" *Green v. Higgins,* 217 Kan. 217, 221, 535 P.2d 446 (1975).

In finding that Shade had unclean hands in this case, the district court relied upon Wistuba's testimony about a conversation he had with his attorney in 1990 in which his attorney allegedly told him that SRS's paternity action had been dismissed because Shade refused to cooperate with testing. Wistuba also attempted to testify regarding a letter he received from his attorney, which stated the 1990 action was dismissed because of Shade's noncooperation with testing.

At trial, Wistuba was permitted to testify that his former attorney told him that Shade failed to cooperate with testing in the 1990 action. Wistuba also admitted a letter from SRS to Wistuba's former attorney stating that Shade had failed to cooperate with testing. Although Shade objected to this evidence on hearsay and other grounds, the district court overruled Shade's hearsay objection, stating the evidence was not offered to prove the truth of the matter asserted but to show the basis for Wistuba's actions. The district court subsequently held, "[T]he Court accepts this testimony that [Wistuba] submitted and complied with [the 1990 court's] expectations. The Court finds from the evidence that [Shade] did not."

Shade points out that Wistuba's testimony was the only evidence the district court could have relied on to find that she did not cooperate in the 1990 case because the court records from the 1990 case contained no indication as to the reason the case was dis-

missed. Thus, she argues the court must have relied on the evidence for the truth of the matter asserted therein.

A district court's decisions regarding admissibility of evidence, subject to the exclusionary rules, is reviewed for abuse of discretion. Discretion is abused when judicial action is arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the district court's view. See *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004).

Here, the district court stated it admitted the evidence to show why Wistuba acted as he testified; nevertheless, the court relied upon on the evidence for the truth of the matter asserted—*i.e.*, that Shade refused to comply with testing. We find no other evidence in the record to support this determination. Thus, we conclude the district court abused its discretion in admitting the evidence of Shade's lack of cooperation in the 1990 paternity action brought by SRS.

We note that even if this evidence had been properly admitted, it did not support the district court's application of the equitable doctrine of clean hands. The evidence did not establish that Shade acted willfully, fraudulently, illegally, or in an unconscionable manner with respect to the paternity action brought by SRS in 1990. Indeed, we find no evidence in the record whatsoever concerning Shade's motive, if any, in refusing to participate in that action. Moreover, as Shade points out, a mother's alleged wrongful conduct is irrelevant in determining the parents' respective obligations and duty of support. See *State v. Seyer*, 252 Kan. 646, 655, 847 P.2d 1273 (1993).

Accordingly, on remand, the district court is directed to calculate the appropriate award of child support pursuant to K.S.A. 2004 Supp. 38-1121(e) without consideration of the equitable doctrine of clean hands.

In summary, we reverse and remand this case to the district court with directions to recalculate the child support award pursuant to K.S.A. 2004 Supp. 38-1121(e) based upon the finding that the presumption of paternity arose when Wistuba acquiesced to being named as the child's father on the birth certificate. In recalculating the amount of the award, the district court is further

directed to base its award upon the evidence presented and to reimburse all or part of the expenses of support and education of the child from at least the date the presumption first arose to the August 31, 2004, date the order was entered (since Katie is no longer a minor), without consideration of the equitable doctrines of laches and clean hands.

Reversed and remanded.