FILED
United States Court of Appeals
Tenth Circuit

May 25, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NANCY JONES, Executrix of the Estate of
Gomer Jones, deceased,

      Plaintiff - Appellant,

v.

THE ESTATE OF LYNN COLE,

      Defendant - Appellee.

No. 11-3137
(D.C. No. 6:08-CV-01011-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **GORSUCH,** and **MATHESON**, Circuit Judges.

This appeal arises from a dispute over majority ownership of a Kansas

corporation, Product Development Group, Inc. ("PDG").  The parties agree there was a

purchase agreement and a bill of sale for Lynn Cole to buy 52% of PDG stock from

Gomer Jones, but they dispute whether the stock was transferred to Mr. Cole.  We agree

---

[*]After examining the briefs and the appellate record, this three-judge panel has
determined unanimously to honor the parties' request for a decision on the briefs without
oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App.
P. 32.1 and 10th Cir. R. 32.1.

with the district court that equitable estoppel prevents Mr. Jones's estate from contesting Mr. Cole's ownership. We also affirm the district court's denial of a new trial motion. The district court exercised diversity jurisdiction under 28 U.S.C. § 1332(a). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

**A. *Factual Background*[1]**

Mr. Jones died in 1993. Nancy Jones—Mr. Jones's daughter, the executrix of his estate, and a former PDG employee—brought this suit in 2008 against Mr. Cole. Mr. Cole died in 2009. His estate was substituted as a party.

On June 25, 1984, Mr. Jones, then the president and owner of PDG, signed an agreement to sell 52% of the stock in PDG to Mr. Cole. The agreement provided in part:

> That the parties hereto have agreed on a sale of [f]ifty-two percent (52%) of the stock in [PDG], *dated even date with this agreement wherein [Mr. Jones] has sold to [Mr. Cole] 52% of the stock in [PDG],* said stock being involved in litigation with the Rose Hill State Bank and is pledged as security for the loan and mortgage of the corporation with the bank by [Mr. Jones]. [Mr. Cole] hereby agrees that *as consideration for the sale of said stock he will take full control and dedicate his full best efforts to the presentation of a plan in the Chapter 11 proceedings in the Bankruptcy Court and will protect [Mr. Jones] from any personal claims by the Internal Revenue Service as filed in the Chapter 11 proceedings.*

---

[1]We include information in this background section from the bench trial and other parts of the record and pleadings before us, as well as contentions from the briefs. Our determinations on the issues rely only on evidence that Ms. Jones presented at the bench trial or has not disputed.

> [Mr. Cole] further agrees with [Mr. Jones] that he will use his best efforts to remove the indebtedness owed by [Mr. Jones] personally to the Rose Hill State Bank to relieve [Mr. Jones] of any further liability if possible.

Aplt. Add. at 1 (emphases added).

Mr. Jones also signed a bill of sale and a waiver that same day. The bill of sale provided in part that "in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration, *the receipt of which is hereby acknowledged*, [Mr.] Jones *does* bargain, *sell, transfer*, and set over unto [Mr.] Cole . . . FIFTY-TWO PERCENT (52%) of the stock in [PDG] to have and to hold, all and singular, the said title to stock, forever . . . ." *Id.* at 2 (emphases added). The bill of sale noted the stock was subject to claims in litigation with Rose Hill State Bank. The waiver provided that Mr. Jones waived "all rights under the by-laws of [PDG] to the purchase of 272,340 shares of stock by Lynn Cole from Gomer W. Jones." *Id.* at 96.

The parties do not dispute (1) the existence of the agreement, bill of sale, and waiver; (2) that Mr. Cole took control of PDG; (3) that Mr. Cole voted 272,340 (52% of the total) shares at a November 1984 stockholders' meeting; and (4) that Ms. Jones signed an annual report to the Kansas Secretary of State indicating that Mr. Cole owned 52% of PDG.[2]

---

[2]At trial, Ms. Jones claimed she only signed the report because Mr. Cole, her boss at the time, directed her to do so. Ms. Jones admitted at trial that she had seen the stock purchase agreement when she was working for PDG.

In 1986, Mr. Cole started another company, Aero Standard Tooling ("AST"). Although the parties dispute his motives for forming AST, they agree that AST used PDG's equipment, facilities, and employees. According to Ms. Jones, Mr. Cole took large loans from AST, which he never repaid. According to Mr. Cole, he transferred PDG's assets to AST

> to allow the proprietary rights of PDG to be used to continue to earn income to satisfy the financial obligations of PDG . . . . As a result of such transfer, [Mr. Cole] was able to generate sufficient cash flow to pay all of PDG's debts, including the loan with the Rose Hill State Bank, get PDG out of bankruptcy, and fully satisfy the personal obligations of Gomer Jones to the IRS.

Aple. Br. at 33. Mr. Cole further observes in his brief: "It is interesting to note that during the ten years PDG's operations were being conducted under the umbrella of AST, there is no record of [Mr.] Jones or [Ms.] Jones making any complaint or causing any litigation against [Mr.] Cole based on his alleged usurpation of PDG's assets." *Id.* The IRS shut down AST in 1994 for failure to pay withholding taxes. At that time, Mr. Cole moved all employees back to PDG.

On April 20, 1993, a bankruptcy judge signed an Order for Final Decree in the PDG bankruptcy reorganization case after the bankrupt estate had been fully administered. By certified letter dated June 25, 1993, the Rose Hill State Bank sent Mr. Jones the PDG stock certificates it had held as security and a "paid in full note" for PDG. Aplt. Add. at 15. According to Mr. Cole, this letter signified the fulfillment of all promises under the stock purchase agreement—Mr. Jones's tax obligations were met, a

-4-

plan had been presented on behalf of PDG to the bankruptcy court, and Mr. Jones's personal liability on the loan to PDG from Rose Hill State Bank had been removed. However, Ms. Jones claims there were other unwritten obligations Mr. Cole had agreed to before he could take possession of the stock.

Following receipt of the letter and stock from Rose Hill State Bank, Mr. Jones asked Ms. Jones to prepare two stock certificates to evidence the respective ownership of PDG stock by both Mr. Cole and himself. Ms. Jones did so—Stock Certificate No. 9 represented 272,340 (or 52%) of the shares to Mr. Cole, dated July 27, 1993; and Stock Certificate No. 10 represented 251,390 (or 48%) of the shares to Mr. Jones, dated July 17, 1993. The parties dispute whether Mr. Cole's stock certificate was delivered to him. Ms. Jones stated at trial that she was not "aware of any action taken by [Mr.] Jones to deliver [the stock certificate] to [Mr.] Cole." Aplt. Appx., Vol. II, at 45. Mr. Cole claims that Mr. Jones personally handed the certificate to him at the PDG offices but that the certificate was later taken from Mr. Cole's desk.

Mr. Jones died in September 1993. Ms. Jones claimed she found both Stock Certificate Nos. 9 and 10 among her father's papers after his death.

After Mr. Jones's death, Mr. Cole continued to operate PDG. He retained Ms. Jones with PDG until it stopped manufacturing operations in 1997. Ms. Jones alleged that Mr. Cole took PDG equipment to his sister in Missouri after he closed PDG operations. Ms. Jones also alleged that Mr. Cole improperly paid PDG money to certain individuals.

**B.** *Procedural History*

Ms. Jones, acting as executrix of her father's estate, brought a declaratory judgment action against Mr. Cole in 2008. She alleged that Mr. Jones's estate was the true owner of the stock that Mr. Cole had claimed for approximately 24 years. She claimed that the stock had never been properly transferred to Mr. Cole and that the statute of limitations now precluded Mr. Cole from enforcing his contract rights. Mr. Cole answered that all elements of the stock purchase agreement had been performed, the stock had been actually or constructively transferred, and the doctrines of equitable estoppel and laches precluded Ms. Jones from attacking his ownership of the stock.

The district court denied both parties' motions for summary judgment. Mr. Cole died and his estate was substituted as the defendant.[3] The district court held a bench trial. At the conclusion of Ms. Jones's presentation of evidence, Mr. Cole moved for judgment, which the court granted, referring to its ruling as a judgment as a matter of law ("JMOL"). *See Jones v. Cole*, No. 08-1011-JTM, 2010 WL 5015307, at *4 (D. Kan. Dec. 3, 2010) ("*Jones I*").

Ms. Jones then filed a motion for a new trial, arguing that the evidence did not support the judgment and that there was newly discovered evidence. The district court denied her motion. *See Jones v. Cole*, No. 08-1011-JTM, 2011 WL 1375685, at *4 (D.

---

[3]To avoid confusion over this substitution of parties in the midst of the proceedings, we follow the district court's example in referring to both Mr. Cole and his estate as Mr. Cole.

Kan. Apr. 12, 2011) ("*Jones II*"). Ms. Jones appeals, requesting that this court set aside the judgment and grant a new trial.

## II. DISCUSSION

Ms. Jones argues on appeal that the district court erred in determining that (1) constructive transfer of the stock occurred; (2) the Jones estate is equitably estopped from contesting Mr. Cole's ownership of PDG; (3) laches prevents the Jones estate from contesting ownership; and (4) a new trial was not warranted by newly discovered evidence or lack of evidentiary support for the judgment. She also argues Mr. Cole is not entitled to any equitable relief because he has "unclean hands."

Because we conclude that equitable estoppel prevents the Jones estate from contesting Mr. Cole's ownership of 52% of PDG, we need not consider whether laches or constructive transfer also applies. We also hold that the district court did not abuse its discretion in refusing to grant a new trial.

### A. *Standard of Review for Bench Trials*

As noted below, we review the district court's equitable estoppel determination and its denial of the motion for a new trial for abuse of discretion. In doing so, and because this appeal comes to us from a judgment in a bench trial pursuant to Fed. R. Civ. P. 52(c), we review findings of fact for clear error and legal conclusions de novo. *See Chavez v. City of Albuquerque*, 630 F.3d 1300, 1306 (10th Cir. 2011). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as

the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985). "The trial court's findings of fact will be upheld unless, after review, the appellate court is firmly convinced a mistake has been made." *Litwin v. United States*, 983 F.2d 997, 999 (10th Cir. 1993).[4]

**B. *Equitable Estoppel***

**1. *Standard of Review***

"We review the district court's exercise of its equitable powers for abuse of discretion." *Clark v. State Farm Mut. Auto Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005). "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Id.* (quotations omitted).

**2. *Application of Equitable Estoppel***

Under Kansas law, equitable estoppel is defined as

---

[4]The district court viewed Mr. Cole's motion for judgment as a request for judgment as a matter of law that required considering the evidence in the light most favorable to the Jones estate. *See Jones I*, 2010 LS 5015307, at *1. That deferential standard applies to a JMOL motion in a jury trial under Fed. R. Civ. P. 50(a). But because Mr. Cole moved for judgment at the conclusion of Ms. Jones's presentation of evidence in a *bench trial*, the district court's review was governed by Fed. R. Civ. P. 52(c), which does not require the district court to consider the evidence in the light most favorable to the Jones estate. *See* Fed. R. Civ. P. 52(c) advisory committee's note ("The standards that govern judgment as a matter of law in a jury case have no bearing on a decision under rule 52(c)."); s*ee also United States v. $242,484.00 in U.S. Currency*, 389 F.3d 1149, 1172 (11th Cir. 2004) ("In addressing a Rule 52(c) motion, the court does not view the evidence in the light most favorable to the nonmoving party, as it would in passing on a Rule 56 motion for summary judgment or a Rule 50(a) motion for judgment as a matter of law; instead, it exercises its role as factfinder.").

-8-

> *the effect of the voluntary conduct of a party whereby it is precluded*, both at law and in equity, *from asserting rights against another person relying on such conduct.* A party seeking to invoke equitable estoppel must show that the *acts, representations, admissions, or silence of another party (when it had a duty to speak) induced the first party to believe certain facts existed. There must also be a showing the first party rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.* There can be no equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved. Estoppel will not be deemed to arise from facts which are ambiguous and subject to more than one construction. A party may not properly base a claim of estoppel in its favor on its own wrongful act or dereliction of duty, or for acts or omissions induced by its own conduct.

*Gillespie v. Seymour*, 823 P.2d 782, 788-89 (Kan. 1991) (emphases added) (citation omitted).

The purchase agreement is the first affirmative representation in the record that Mr. Jones made to Mr. Cole regarding ownership of the stock. The agreement did not say Mr. Cole would own the stock at some future date, but that "dated even date with this agreement wherein [Mr. Jones] *has sold* to [Mr. Cole] 52% of the stock in [PDG]." Aplt. Add. at 1 (emphasis added). In other words, the agreement, signed by both parties, indicated that the stock belonged to Mr. Cole on June 25, 1984. Likewise, the bill of sale stated that Mr. Jones "does bargain, *sell*, *transfer*, and set over unto [Mr.] Cole [52%] of the stock in [PDG]." *Id.* at 2 (emphasis added). It used present rather than future tense regarding the transfer of stock. Consistent with the agreement and bill of sale, Mr. Jones allowed Mr. Cole to vote the shares and to take control of the company—further

indications to Mr. Cole that he immediately owned the stock.

Mr. Cole relied on these representations regarding his stock ownership.  He spent substantial time and effort fulfilling his obligations under the purchase agreement.  He "present[ed] a plan in the Chapter 11 proceedings in the Bankruptcy Court" that "protect[ed] [Mr. Jones] from any personal claim by the [IRS]," and he "remove[d] the indebtedness owed by [Mr. Jones] personally to the Rose Hill State Bank."  *Id.* at 1.  After fulfilling those tasks, Mr. Cole continued to devote time and energy to the company that he believed he owned due to Mr. Jones's representations and conduct.

The foregoing establishes equitable estoppel under Kansas law.  *See Gillespie*, 823 P.2d at 788-89.  Mr. Jones's voluntary conduct – in making representations in the purchase agreement, bill of sale, and waiver; and in allowing Mr. Cole to vote his majority shares and run the company – induced Mr. Cole to believe he owned 52 percent of the shares.  Further, Mr. Cole relied and acted upon that belief by expending significant time and effort to manage PDG and to extricate PDG and Mr. Jones from their financial difficulties.  Finally, in light of Mr. Jones's representations and Mr. Cole's belief and reliance, Mr. Cole would be prejudiced if the Jones estate were allowed to deny Mr. Cole's stock ownership.

We reject Ms. Jones's argument that the district court should not have relied on equitable estoppel because Mr. Cole should have exercised greater diligence in ensuring the stock actually transferred.  Given the terms of the purchase agreement, his unfettered control of the company, and the absence of any evidence that Mr. Cole's ownership was

-10-

challenged until this lawsuit, Mr. Cole reasonably believed that he owned the stock.

We conclude that the district court did not abuse its discretion in holding that the Jones estate is equitably "estopped from contesting the transfer of ownership to [Mr.] Cole." *Jones I*, 2010 WL 5015307, at \*3; *see also Gillespie*, 823 P.2d at 788-89.

### 3.  *Unclean Hands*

Ms. Jones also argues that Mr. Cole is not entitled to equitable estoppel or other equitable relief because he has "unclean hands."  Under Kansas law, the unclean hands doctrine provides that "no person can obtain affirmative relief in equity with respect to a transaction in which the person has been guilty of inequitable conduct." *T.S.I. Holdings, Inc., v. Jenkins*, 924 P.2d 1239, 1250 (Kan. 1996).  "The clean hands maxim is not a binding rule, but it is to be applied in the sound discretion of the court." *Id.*

> The doctrine of unclean hands is *applied sparingly, in very limited situations. . . .*  Conduct which will render a party's hands unclean so as to deny . . . access to a court of equity must be *willful conduct which is fraudulent, illegal or unconscionable.*  Furthermore, the objectionable misconduct must bear an immediate relation to the subject-matter of the suit and in some measure *affect the equitable relations . . . between the parties to the litigation and arising out of the transaction.*

*In re Parentage of Shade ex rel Shade*, 126 P.3d 445, 453 (Kan. Ct. App. 2006) (emphases added) (quotations omitted).

Ms. Jones argues that Mr. Cole has unclean hands because of improper dealings involving AST that were contrary to PDG's interests.  She claims the district court improperly failed to address this argument.

-11-

The bench trial transcript shows that the district court heard and considered argument regarding the unclean hands doctrine at multiple points in the proceedings. The transcript also shows that the district court rejected the unclean hands argument. For example, the district court stated that, even "looking at the facts in the light most favorable to [the Jones estate]," it did not find "ipso facto unclean hands." Aplt. Appx., Vol. II, at 225.[5] This statement can reasonably and correctly be understood as a conclusion that Ms. Jones's evidence did not rise to the level of creating a question of unclean hands that would require any countervailing evidence.

Given our deferential standard of review and the evidence in the record regarding Mr. Cole's fulfillment of his contractual obligations with regard to PDG outlined in the stock purchase contract, we conclude that the district court did not abuse its discretion in deciding that equitable estoppel applied despite the unclean-hands allegations.

**C.** *New Trial*

We review the denial of a new trial motion for abuse of discretion. *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1283 (10th Cir. 2003). "This court will reverse the denial of a motion for a new trial only if the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (quotations omitted).

Ms. Jones argues that the district court erred in denying her motion for a new trial

_____

[5]As noted earlier, it was not necessary for the district court to view the evidence in the light most favorable to the Jones estate. *See supra* n.4.

based on sufficiency of the evidence and newly discovered evidence. She argues that much of the evidence on which the district court relied was never properly admitted at trial. She contends the remaining evidence cannot support the ultimate holdings. She further argues that Mr. Cole's testimony in a 1990 deposition from a case not involving PDG undermines his arguments in this case. She claims the deposition is "newly discovered" because "it was provided to [her] counsel as one of 36 exhibits more than an inch thick on the morning of trial," leaving insufficient time for counsel to review all the materials until after the trial ended that evening. Aplt. Br. at 42.

Ms. Jones's sufficiency argument fails because, even if we were to disregard all the evidence to which she objects, there would be sufficient evidence to uphold the district court's decision regarding estoppel. This remaining evidence includes (1) the purchase agreement, the bill of sale, and the waiver; (2) Mr. Cole's voting the shares and taking control of PDG; (3) Mr. Cole's fulfillment of obligations under the stock purchase agreement in that he relieved Mr. Jones of obligations to the IRS and Rose Hill State Bank and presented a plan in bankruptcy court; and (4) the long delay in bringing any action to challenge Mr. Cole's ownership of the stock. Given this evidence, we hold that the district court did not abuse its discretion in refusing to grant a new trial on sufficiency grounds.

Ms. Jones's argument regarding newly discovered evidence presents a closer question, especially if the record showed only that such evidence was provided in a large stack of documents on the morning of trial. But Mr. Cole asserts that Ms. Jones was not

reasonably diligent in discovering the evidence at issue.

> In order to obtain a new trial based on newly discovered evidence, the moving party must show that (1) the evidence was newly discovered since the trial; (2) *he was diligent in discovering the evidence;* (3) the newly discovered evidence is not merely cumulative or impeaching; (4) the newly discovered evidence would have been material; and (5) a new trial with this newly discovered evidence would probably produce a different result.

*Wolfgang v. Mid-Am. Motorsports, Inc.,* 111 F.3d 1515, 1529 (10th Cir. 1997) (emphasis added); *see also* 11 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2808 (2d ed. 1995) ("Wright & Miller") ("The moving party must have been excusably ignorant of the facts despite using due diligence to learn about them.").[6]

Mr. Cole has shown that "thirty days prior to trial, Plaintiff was specifically alerted to the existence of the deposition of [Mr.] Cole . . . by its inclusion in Defendant's Designation of Transcripts filed in this case." Aple. Br. at 34. That filing included the name of the court reporter, the case caption, case number, and court location. *See* Aple. Supp. Appx. at 23.

Ms. Jones therefore could have requested the deposition from Mr. Cole or the court reporter in advance of trial. As the district court explained, if the evidence was previously available to a party through reasonable care and diligence, it cannot be newly

---

[6]"However, it has been held that a new trial may be granted even though proper diligence was not used if this is necessary to prevent a manifest miscarriage of justice." Wright & Miller § 2808. The record in this case does not suggest that the trial court's failure to grant a new trial resulted in a "manifest miscarriage of justice."

discovered.  *Jones II,* 2011 WL 1375685, at \*3.

Thus, because with reasonable diligence Ms. Jones could have obtained the deposition before trial, the district court did not abuse its discretion in denying the new trial motion.

## III.    CONCLUSION

We affirm the district court decision regarding equitable estoppel.  We therefore need not reach the other equitable issues.  We also affirm the district court's denial of a new trial.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge