NOT DESIGNATED FOR PUBLICATION

No. 114,466

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

ERNEST HERRERA, JR.,
*Appellee*,

and

NICOLE DENINE HERRERA,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed June 17, 2016. Affirmed.

*Patrick C. Blanchard*, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, for appellant.

*Charles F. Harris*, of Law Office of Charles F. Harris, of Wichita, for appellee.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*:  Ernest Herrera, Jr. and Nicole Denine Herrera were divorced on October 31, 2012. In a provision of the divorce decree, the district court ordered Nicole to refinance the marital home solely in her name within 24 months or sell the property. About 2 years later, Ernest filed a motion to compel Nicole to sell the home due to her failure to comply with the divorce decree. In response, Nicole argued that because Ernest was not timely with his child support payments, the "clean hands" doctrine precluded the district court from granting the motion. Two district judges separately considered the

1

matter and reached a similar conclusion—Nicole was ordered to sell the home by auction within 60 days. Finding no abuse of discretion by the district court, we affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND

Ernest and Nicole were divorced on October 31, 2012. In the divorce decree, the district court awarded Nicole primary custody of their four children and ordered Ernest to pay $1,598 a month in child support starting on November 1, 2012. The district court also ordered Ernest to pay $635 a month in spousal maintenance beginning November 1, 2012. At the time of the judgment, Ernest had a combined temporary child support and spousal maintenance arrearage of $5,260.80 for June 1, 2012, through October 31, 2012. In the divorce decree, the district court awarded Nicole a judgment in that amount.

In the divorce decree, the district court also awarded Nicole the marital home in Derby, Kansas, and provided:

> "There is no equity in said real property and the parties may be upside down on the mortgage if it is sold. [Nicole] shall be responsible for the monthly mortgage payment on said real property with US Bank and hold [Ernest] harmless thereon. [Nicole] shall refinance said mortgage within twenty-four (24) months of the filing of this Journal Entry. The Court shall retain jurisdiction over this issue until said real property is refinanced in [Nicole]'s name only or sold."

The journal entry of judgment and divorce decree was filed on December 20, 2012.

Prior to their separation, Nicole had been a stay-at-home mother. She worked part-time and began attending college in the fall of 2012 with an expected graduation in May of 2016. Ernest was in the Air Force reserves assigned to a reserve unit in Albuquerque, New Mexico, in September 2012. He also had civilian employment in Albuquerque.

2

Over the next 2 years, Ernest's arrearage fluctuated. By April 2013, it had grown to $10,168.74, but by December 2013 he had paid it down to $7,896.48. By June 2014, it had increased to $10,241.48. On June 12, 2014, the district court sanctioned Ernest for his failure to answer discovery requests about his current income. His monthly child support obligation was increased to $2,023.

On October 21, 2014, Ernest filed a motion asking the district court to compel Nicole to sell or refinance the marital home. Two hearings on the motion occurred before District Judge Harold E. Flaigle, with the last hearing on December 22, 2014. At that hearing, Ernest contended he had used his veteran benefits to mortgage the marital home, and he was unable to obtain another mortgage using those benefits until the home was sold. Nicole countered that Ernest's failure to pay child support in a timely fashion had caused her financial problems. According to Nicole, because of Ernest's actions, she missed several mortgage payments which resulted in a threat of foreclosure. Nicole also sought to delay any sale by arguing that her credit score was improving, and within 1 or 2 years she would be able to qualify for a loan in her own name. After considering the parties' arguments the district court enforced the divorce decree by ordering the marital home to be sold at auction within 60 days.

On January 16, 2015, Nicole filed a motion to alter, amend, or reconsider the judgment entered December 22, 2014. She requested that District Judge Bruce C. Brown—the judge who entered the divorce decree—preside over the hearing on the motion.

On May 4, 2015, Judge Brown held a hearing on the motion to alter, amend, or reconsider the judgment. Of note, by this time Ernest had paid his arrearage down to about $2,000. At the hearing, Nicole reprised her arguments regarding Ernest's failure to pay child support in a timely manner and its effect on her ability to refinance the marital home. According to Nicole, she was unable to refinance the home because the missed

mortgage payments hurt her credit rating. She claimed she applied for two loans online but was rejected without receiving any formal rejection letter.

On the other hand, Ernest argued that the district court was aware of his arrearage when it entered the original divorce decree which included refinancing the marital home within 2 years. He also argued the district court only retained jurisdiction to enforce the judgment, not modify it. Finally, Ernest highlighted that Nicole had not provided any documentation that she had attempted to apply for refinancing.

Judge Brown denied the motion to reconsider. He ruled that Nicole should sell the marital home by auction within 60 days. In reaching its decision, the district court noted that it is common in divorce cases that the marital home cannot be maintained due to changes in the financial situation of the parties. The district court acknowledged that Ernest was not fully compliant in paying his child support but stated this development was a separate matter. The district court noted that if the issue had been so dire, Nicole could have pursued a contempt motion. The district court also noted that it gave Nicole 24 months to refinance the mortgage because of the possible difficulty she would have in making this financial transaction. Finally, the district court stated it had ruled on the issue in October 2012, and it was time to move forward with the parties' separation by resolving the marital home mortgage. Nicole filed a timely appeal.

## DISCUSSION

On appeal, Nicole contends the district court erred by ordering her to sell the marital home. She argues that she was unable to refinance the home because Ernest failed to keep current on his child support payments. According to Nicole, because Ernest did not have clean hands, the district court should not have granted him the relief he was seeking by ordering her to sell the home.

4

In response, Ernest argues that the district court did not abuse its discretion. He contends the clean hands doctrine is not a binding rule and is only applied at the discretion of the court. Ernest discounts the cases Nicole cites because they do not involve the enforcement of a judgment and, therefore, do not control the present case.

At the outset, it is necessary to set forth the relevant standards of review and Kansas law that pertain to the resolution of this issue. A district court's division of property in a divorce action is governed by K.S.A. 2015 Supp. 23-2801 *et seq.* Appellate review is for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). The standard of review for the denial of a motion to alter or amend the judgment is also abuse of discretion. *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

The clean hands doctrine is premised upon the rule of equity that "he who comes into equity must come with clean hands," and it provides in substance that "no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct." *Green v. Higgins*, 217 Kan. 217, 220, 535 P.2d 446 (1975). The clean hands doctrine "is not a binding rule, but is to be applied in the sound discretion of the court." 217 Kan. at 220. When applying the doctrine, "courts are concerned primarily with their own integrity [and] [t]he doctrine of unclean hands is derived from the unwillingness of a court to give its peculiar relief to a suitor who in the very controversy has so conducted himself as to shock the moral sensibilities of the judge." 217 Kan. at 221.

Kansas courts have applied the clean hands doctrine in family law cases, most often in situations involving child custody or child support. See, *e.g.*, *Perrenoud v.*

5

*Perrenoud*, 206 Kan. 559, 579-80, 480 P.2d 749 (1971) (upholding district court's refusal to relitigate child custody issues recently litigated in another state based on clean hands doctrine); *Boyce v. Boyce*, 13 Kan. App. 2d 585, 590-91, 776 P.2d 1204, *rev. denied* 245 Kan. 782 (1989) (affirming refusal to exercise jurisdiction to relitigate child support order under clean hands doctrine).

Based on our survey of Kansas family law cases, however, the clean hands doctrine "is applied sparingly, in very limited situations." *In re Parentage of Shade*, 34 Kan. App. 2d 895, 905, 126 P.3d 445, *rev. denied* 281 Kan. 1378 (2006). In fact, while Kansas appellate courts have reversed district courts for applying the clean hands doctrine in family law cases, we were unable to find any cases where a Kansas appellate court overturned a district court for exercising its discretion in *not* applying the doctrine. See, *e.g.*, 34 Kan. App. 2d at 906 (finding district court erred in applying clean hands doctrine in child support case because evidence did not demonstrate mother acted "willfully, fraudulently, illegally, or in an unconscionable manner"); *In re Marriage of Johnson*, 24 Kan. App. 2d 631, 635, 950 P.2d 267 (1997), *rev. denied* 264 Kan. 821 (1998) (affirming district court's refusal to apply clean hands doctrine in child support case in which father lost his job due to drug use); *Guye v. Guye*, 8 Kan. App. 2d 219, 222, 654 P.2d 482 (1982) (affirming district court's refusal to decline jurisdiction over divorce petition due to mother's denial of visitation).

Nicole's central complaint is that the district court "either ignored or did not properly weigh Ernest's lack of clean hands and its ruling was clearly against reason and evidence and was more than just an error in judgment."

Our standard of review—abuse of discretion—controls the resolution of this appeal. In this unique case, two district judges were separately presented with facts, figures, and extensive arguments regarding the propriety of enforcing the divorce decree's order to refinance the mortgage. Both district judges independently considered the matter,

6

made appropriate factual findings, and articulated their rationale for arriving at the same conclusion that the marital home should be sold at auction. Given these circumstances we are unable to find the judicial action of Judge Brown in denying reconsideration was arbitrary, fanciful, unreasonable, or based on an error of law or fact. See *Northern Natural Gas Co.*, 296 Kan. at 935.

Nicole argues that Ernest's actions in accruing an arrearage contributed to her inability to refinance the marital home. She argues the district court either ignored or did not properly weigh Ernest's failure to pay child support in a timely manner. We disagree.

First, Judge Brown did not ignore Ernest's payment record. The district court explicitly stated it had considered Ernest's delay in making payments on the arrearages in reaching its decision. Second, with regard to the allegedly improper weighing of the evidence, under our longstanding rules, appellate courts do not reweigh evidence presented in the district court. See *Bellamy v. State*, 285 Kan. 346, 353, 172 P.3d 10 (2007). Third, payment information presented at the May 4, 2015, hearing showed that Ernest's arrearage had been paid down to about $2,000. While not current as of that date, Ernest's delay in making his payments does not "shock the moral sensibilities of the judge" sufficient to warrant imposition of the clean hands doctrine. *Higgins*, 217 Kan. at 221. Moreover, Nicole claimed she sought to refinance the home online on only two occasions in 2 years. This may be viewed as a less than diligent effort at implementing the district court's order.

Upon our review of the record on appeal, we are persuaded that both district judges thoroughly considered the parties' facts and arguments prior to ordering enforcement of the divorce decree. We discern no abuse of discretion in either district judge not applying the clean hands doctrine to the facts of this case. Finally, we hold the final ruling of Judge Brown denying reconsideration of Judge Flaigle's ruling was not error but an appropriate use of judicial discretion.

7

Affirmed.