WILLIAM H. A. BROWN *vs.* ARTHUR BROWN ET AL.

Third Judicial District, New Haven, June Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The maxim that he who seeks equity must come with clean hands, requires
not only that the parties to a contract should act *bona fide* toward each
other, but also that they should not act *mala fide* in respect to other
persons who stand in such a relation to either as to be affected by the
contract or its consequences.

The plaintiff's wife had been divorced from him and the custody of their
four minor children had been awarded to her. By an arrangement
between them he had paid her a certain sum of money each month for
the support of the children. In order to deceive her as to his finan-
cial ability and to relieve himself from the payment of said sum of
money, the plaintiff caused certain of his property to be secretly con-
veyed to the defendant. *Held* that a court of equity would not aid
him to obtain a reconveyance of that property from the defendant.

[Argued June 4th—decided July 19th, 1895.]

SUIT praying that the plaintiff might be adjudged to be
the owner and entitled to the possession of an undivided
half interest in certain real estate, and for other equitable
relief, as well as damages ; brought to the Superior Court in
Fairfield County and tried to the court, *Prentice, J.;* facts
found and judgment rendered for the defendants, and appeal
by the plaintiff for alleged errors in the rulings of the court.
*No error.*

The case is sufficiently stated in the opinion.

*Curtis Thompson,* and *William F. Randel* of New York,
for the appellant (plaintiff).

I. The facts found constitute a fraud on the part of the
defendant, Arthur Brown, against the plaintiff, which entitles
him to relief in equity.

Although the court does not expressly find a fraudulent
intent to accompany the acts of Arthur Brown in misappro-
priating such property, yet they do not exonerate him from
an inference which is unavoidably made from the facts dis-

closed, that he acted fraudulently. *Story* v. *R. R. Co.*, 24
Conn., 113; *Collender* v. *Cosgrove*, 17 id., 27; *Pettibone* v.
*Stevens*, 15 id., 27; *Broome* v. *Beers*, 6 id., 210. The facts
raise a trust also, for the benefit of the plaintiff, which entitle
him to relief in equity. Arthur by acquiring a pecuniary
advantage through the medium of his fiduciary character, is
accountable as constructive trustee. Lewin, Trusts, 187,
191; *Bulkley* v. *Wilford*, 2 Cl. & Fin., 177; Beach, Mod.
Eq. Jur., §§ 126, 141, 230, 233; *Tate* v. *Williamson*, L. R. 2
Ch. App., 55.

II. The conclusion of fact that Arthur acted in good faith,
must have been an inference of law from the facts specific-
ally found, and so reviewable. *Ward* v. *Ward*, 59 Conn.,
197. But whether the defendant acted in good or bad faith
in making his promises, is immaterial; in either case he is a
trustee. *Dowd* v. *Tucker*, 41 Conn., 205.

The suggestion of the court about the relations of Mary J.
Lockwood and a third woman to the plaintiff, are wholly
aside from the issues joined, and they ought not to be con-
sidered in the case. The court below applied the rule *in
pari delicto;* but this whole scheme was manifestly invented
and carried out by Arthur, working on the feelings, fears
and infirmities of his mother and his brother, and if there
was any wrong in it, which we deny, then Arthur was the
principal wrong-doer, and in view of what he afterwards did
with the property, and to the plaintiff, he was the only
wrong-doer.

The courts have not adopted an arbitrary and inflexible
rule in such cases, but a reasonable rule. 6 Amer. & Eng.
Ency. of Law, 708; *Yale G. S. Co.* v. *Wilcox*, 64 Conn., 128.
The plaintiff has wronged no one by his conduct; Arthur
has most grievously wronged the plaintiff. Certainly equity
and good conscience demand that the plaintiff should obtain
what relief is now possible, though that will be very inade-
quate.

*Stiles Judson, Jr.*, for the appellees (defendants).

The defendant's failure to perform his promise cannot be

distorted into any form of fraud, and, in the absence of a fraudulent intent directed against this plaintiff *when this property was obtained from Eliza J. Brown,* the plaintiff fails in his theory of the existence of an implied trust. It is well settled that the failure to perform a promise honestly made is not fraud. *Haussman* v. *Burnham,* 59 Conn., 124; *Perry* v. *McHenry,* 13 Ill., 238. In this respect the case at bar differs radically from the cases of *Dowd* v. *Tucker,* 41 Conn., 197; *Buckingham* v. *Clark,* 61 id., 206; *Gilpatrick* v. *Glidden,* 81 Me., 137. With the express finding of the court that Arthur was guilty of no fraud against the plaintiff, the whole case falls to the ground. The court admitted the evidence of the secret verbal agreement or understanding between Arthur and the plaintiff, not to prove an express trust or any contract, *as such,* but only for the purpose of proving *fraud in the inception of this arrangement,* against the plaintiff. That such evidence is inadmissible to prove an express trust is well settled. *Dean* v. *Dean,* 6 Conn., 287; *Crocker* v. *Higgins,* 7 id., 342; *Todd* v. *Munson,* 53 id., 589.

The contention of plaintiff, that from Arthur's failure to divide this estate, is to be drawn a conclusion of law that fraud against the plaintiff entered into this conveyance to Arthur from his mother, is utterly untenable. *Wheeler* v. *Reynolds,* 66 N. Y., 234; 1 Beach Eq. Jur., § 227; *Kellum* v. *Smith,* 33 Pa. St., 158; *Levy* v. *Brush,* 45 N. Y., 592.

The alleged agreement between these brothers was part of the design of the plaintiff to deceive others regarding the enforcement of rights possessed by them. A wrong-doer who has procured an act to be done fraudulent *per se,* cannot obtain the aid of a court of equity to give effect to such wrongful design. 1 Beach Eq. Jur., §§ 16, 78; *Kirkpatrick* v. *Counsel,* 132 Ill., 342; *Ryan* v. *Ryan,* 97 id., 38; *Smith* v. *Hubbs,* 10 Me., 76; *Bartle* v. *Nutt,* 4 Pet., 185; *Randall* v. *Howard,* 2 Black, 458; *Dent* v. *Ferguson,* 132 U. S., 50; *Wheeler* v. *Sage,* 68 id., 518; 1 Story's Equity, § 298; *Everett* v. *Roby,* 104 N. Car., 479; *Phelps* v. *Curtis,* 80 Ill., 116; *Dunaway* v. *Robertson,* 95 id., 419; *Bouslough* v. *Bouslough,* 68

Pa. St., 499; *Nix* v. *Nix*, 10 Heick, 546; *Tyler* v. *Tyler*, 126 Ill., 525; *Barnes* v. *Starr*, 64 Conn., 136.

ANDREWS, C. J.   This was a complaint brought to the equity side of the Superior Court, praying that the defendants be required to convey to the plaintiff one half of all the property (or so much thereof as there was remaining) which said Arthur Brown received by deed from Eliza J. Brown on the 23d day of May, 1885.   The court heard the case, made a finding of the facts and dismissed the complaint. The plaintiff appealed.

The finding shows that the plaintiff and the defendant Arthur Brown were the only children of the said Eliza J. Brown, late of Fairfield, who died intestate on the 4th day of February, 1890, aged eighty-six years.   On the 23d day of May, 1885, she was possessed of quite a large amount of real estate in Fairfield and elsewhere.

The plaintiff was married in November, 1860, to Mary J. Lockwood, who obtained a divorce from him in 1872, without alimony.   They had five children.   Four of them are now living.   She has ever since had the care of the children. After the divorce and until March, 1885, the plaintiff had paid to his divorced wife, pursuant to an agreement, one hundred dollars a month towards the support of his said children.   About that time he married again and ceased to make these payments.   The children were all minors.   In consequence of his non-payment of the support-money, she consulted counsel with a view of compelling him to contribute to the support of the children, and with a view of enforcing her claim against him and his prospective share in his mother's estate.   This intent of the divorced wife became known to the plaintiff through his brother Arthur.   The plaintiff and his brother, being desirous of thwarting any effort of this kind and preventing the said Mary J. Lockwood Brown from enforcing any claim against the plaintiff, or against any property or estate which might come to him from his mother, and for the further purpose of inducing said Mary J. Lockwood Brown to accept a reduced allowance

for her support, by inducing a belief on her part that the plaintiff would receive nothing from his mother's estate, together planned, arranged and agreed to accomplish the desired results by Arthur pursuading their mother, upon some plausible pretext, to convey and transfer all of her property to him to be held by him for his mother's benefit during her life, and, after her decease, in secret trust for the benefit of the plaintiff, as well as of himself.

This agreement was not shown to be other than a verbal one. The details of it, in so far as they relate to the time of the continuance of the trust after the mother's death, the manner of its execution and the division of the property between the brothers, if any were ever made, did not appear; nor was it shown that the agreement, in these respects, rested in anything more than a general understanding and a brotherly confidence that Arthur would deal fairly and equitably with his brother in the ultimate division, whenever the time came when division could be safely had, consistently with the accomplishment of the purposes sought by the conveyances, as aforesaid.

A few months prior to said May 23d, 1885, the plaintiff had family difficulties, and actual or threatened legal complications, growing out of his relations or alleged relations to a third woman. A desire on his part to prevent any property, present or prospective, being attached or appropriated as a consequence of these complications, co-operated with the purpose before expressed, in inducing him to enter into this arrangement with his brother, and thereby to attempt to secrete his property interests from attachment or execution, by having them in the name of his brother and apparently owned by him. Arthur, pursuant to the arrangement thus made, carried the plan into execution, in so far as the procurement by him from his mother of the tranfers and conveyances was concerned; and on May 23d, 1885, she, without valuable consideration, transferred and conveyed to him by absolute conveyances and tranfers, all her estate. By a letter of May 28th, 1885, Arthur informed the plaintiff of his success in procuring said conveyances, and added that

he would continue in possession, control and management of the property during his mother's lifetime, and upon her death do by the plaintiff as he (Arthur) would have his brother do by him.

Said Eliza J. Brown was not knowing to the plan and arrangement between her sons aforesaid, but, owing to her advanced years and infirmities, was easily led by Arthur to do as was wished of her. She made the conveyances with no desire to deprive the plaintiff of his share of her estate, but under the belief that it was for the plaintiff's best interest, and with the expectation that he was to have his share in the property after her decease. In what Arthur did, as aforesaid, in entering into said arrangement and procuring said conveyances, he had no intention of defrauding his brother, and acted only in his interest and behalf, and in good faith as to him. May 30th, 1890, Arthur, through the medium of a third person, conveyed the real estate described in the complaint to his wife. These conveyances were withheld from record until July 10th, 1894, when they were recorded, and the title to said property is still in her name.

On or about June 28th, 1894, the plaintiff, then visiting his brother, ascertained that he was in embarrassed circumstances by reason of the failure of the business enterprises in which he was engaged, and was owing large sums of money to divers creditors. He then, being ignorant of the conveyances aforesaid to Arthur's wife, requested the defendant Arthur Brown to cause the real estate described in the complaint to be conveyed to him, to preserve it from the creditors of said Arthur. This request was denied—the real state of the title being still concealed.

There can be no doubt that the plaintiff and his brother Arthur had, on the said 23d day of May, 1885, such an interest in the estate of their mother that they might in equity make a binding contract regarding it. A naked possibility or expectancy of an heir to his ancestor's estate, or even of the anticipated rights of a person as next of kin, may be the subject of a contract in equity which will be equivalent to an assignment of the property if, and when, it shall fall into

possession. 2 Spence Eq., 865; *Beckley* v. *Newland*, 2 P. Wms., 182; 2 Story's Eq., § 1040*e*; 3 Pomeroy's Eq., § 1287; *Fitzgerald* v. *Vestal*, 4 Sneed (Tenn.), 258; *Parmelee* v. *Cameron*, 41 N. Y., 392; *Jenkins* v. *Stetson*, 4 Allen, 128.

If there was a contract between these brothers such as is alleged, it created in form an express trust. Arthur was thereby made the trustee of an express trust. Such a trust could not be established by parol, and no claim was made in the trial court that it was proved by the letter of May 28th. *Todd* v. *Munson*, 53 Conn., 579, 589; *Vail's Appeal*, 37 id., 185, 198; *Dean* v. *Dean*, 6 id., 285, 287.

As there was no fraud practiced on their mother this case does not come within the rule laid down in *Dowd* v. *Tucker*, 41 Conn., 197, and other like cases. *Buckingham* v. *Clark*, 61 id., 204, 209.

But we think the plaintiff has no standing in a court of equity. He does not come into court with clean hands. The scheme he entered into with his brother was a fraud upon his minor children by his divorced wife. Its principal aim was to secure a reduction of the allowance to her for their support. The general rule is that the parties to a contract must act not only *bona fide* between themselves, but that they shall not act *mala fide* in respect to other persons who stand in such a relation to either, as to be affected by the contract or its consequences. Whenever a party who, as actor, seeks to set the judicial machinery in motion to obtain some relief, has himself violated conscience or good faith in his prior conduct with the matter of the controversy, then the door of the court will be shut against him; the court will refuse to interfere in his behalf, to acknowledge his right, or award him any remedy. The plaintiff's case comes precisely within this doctrine. This whole topic has been very fully gone over in a recent case in this court. *Barnes* v. *Starr*, 64 Conn., 136. We refer to that case and the cases cited, as expressive of our present views.

There is no error.

In this opinion the other judges concurred.