No. 47,703

PHILIP A. GREEN, and BARBARA A. GREEN, *Appellants*, v. DAMON W. HIGGINS, and CLEO D. HIGGINS, *Appellees*.

(535 P. 2d 446)

Opinion filed May 10, 1975.

*Harlan L. Long*, of Shawnee Mission, argued the cause, and was on the brief for the appellants.

*J. Roy Holliday, Jr.*, of Olathe, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action for specific performance of a contract for the sale of real estate. The facts are not in dispute and are essentially as follows: On May 7, 1969, the defendants-appellees, Damon W. Higgins and Cleo D. Higgins, sold a tract of land to Robert E. Brown and Mark S. Gilman. At the time of this transaction and as a part of the consideration therefor, the Higgins agreed that Brown and Gilman should have a right of first refusal to purchase adjoining land from the Higgins should they desire to sell it. In addition, as a result of this same sale, a real estate agent, Lienna McCulley, obtained an agreement with the Higgins which gave Miss McCulley the right to handle any subsequent sale of the adjoining tract if the contracting or sale occurred prior to June 1, 1971. In April of 1971 the Higgins desired to sell the adjoining tract of land which was subject to the contractual rights just mentioned. The plaintiffs-appellants, Philip A. Green and Barbara A. Green, desired to purchase the adjoining tract of land from the Higgins at a proposed purchase price of $30,000. A contract for the purchase of the property for the proposed price was executed by the Greens and the Higgins on April 21, 1971. Prior to the time the contract was prepared and executed the Higgins advised the Greens that Lienna McCulley would be entitled to a commission on the sale if the contracting or sale occurred prior to June 1, 1971. The contract was dated June 2, 1971, in order to defeat Lienna McCulley's right to handle the sale of the property and to cheat her out of her real estate commission.

Plaintiff, Philip A. Green, testified in his deposition that after this contract was signed Higgins advised him that the property was subject to the right of first refusal held by Brown and Gilman pursuant to the contract of May 7, 1969. Green and Higgins apparently decided that something had to be done to avoid Higgin's obligation to give the first right of refusal to Brown and Gilman. Green testified in substance that he suggested to Higgins that a fictitious contract be prepared and delivered to Brown and Gilman with a letter giving them the opportunity to enter into a contract for the same price or otherwise the right of first refusal would be waived. The fictitious contract was dictated by Mr. Green and typed by Mrs. Green. In this fictitious contract the purchase price was stated to be $40,000 and the designated purchaser of the prop-

erty was Medallion Investment Properties, Inc., a corporation of which Mr. Green was the president. It is undisputed that this fictitious contract with an inflated purchase price in the amount of $40,000 was prepared and delivered to Brown and Gilman to discourage them from exercising their right of first refusal, since the indicated purchase price of $40,000 was an excessive price for the property. This gambit was apparently successful since Brown and Gilman did not exercise their right of first refusal to purchase the property under the terms stated in the fictitious contract.

Thereafter the Higgins decided that they did not want to carry out their contract with the Greens and so advised the Greens. At that point the only money which had changed hands was the $100 given to Higgins by Green at the time the contract was executed. The Higgins offered to return this in August or September of 1971. In January of 1972 Green tendered the balance of the purchase price, $29,900 and requested a warranty deed from Higgins which Higgins refused to provide. On March 28, 1972, the Greens filed this action for specific performance of the contract. The Higgins counterclaimed for damages based upon an alleged clouding of their title and further prayed that their title to the land be quieted against the Greens. Thereafter depositions were taken of Philip A. Green and Damon W. Higgins which brought forth the facts which have been recited above. On the basis of the pleadings and depositions the plaintiffs Green filed a motion for summary judgment. The defendants Higgins then filed a motion to dismiss pursuant to K. S. A. 1973 Supp. 60-212 (b) (6). The Higgins' motion to dismiss was based upon a number of grounds including a defense that since the plaintiffs Green had attempted to perpetrate a fraud upon a third party, the plaintiffs had not come into court with clean hands and therefore should be denied equitable relief by way of specific performance. A hearing was held on the motions filed by the parties. At the conclusion thereof the district court dismissed the petition of the Greens for specific performance and also dismissed the counterclaim of the Higgins seeking damages and a decree quieting title to their land.

In denying relief to both parties the district court found on the undisputed facts as alleged in the pleadings and as established by the depositions, that the conduct of both the plaintiffs Green and the defendants Higgins had been willful, fraudulent, illegal, and unconscionable, that neither party had come into

court with clean hands, and thus neither should be granted any relief by the court. The plaintiffs Green have appealed to this court from the judgment of the district court dismissing their petition and denying them specific performance.

On this appeal the Greens contend that the motion to dismiss filed by the defendants was prematurely sustained because there were genuine issues of fact remaining in the case. We do not agree. K. S. A. 1973 Supp. 60-212 (*b*) provides that if on a motion asserting a defense of failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to the court, the motion shall be treated as one for summary judgment and shall be disposed of as provided in section 60-256, provided all parties are given a reasonable opportunity to present evidentiary material pertaining thereto. In this case the plaintiffs had previously filed a motion for summary judgment based upon the undisputed facts contained in the pleadings and depositions of the parties. Here there is no complaint that the trial court did not afford to the parties every reasonable opportunity to make discovery and to obtain evidence in support of and in opposition to their respective motions. Under the provisions of K. S. A. 60-256 the trial court is authorized to render summary judgment when there is no material issue of fact. Such judgment may in fact be entered on the court's own motion. (*Darby v. Keeran,* 211 Kan. 133, 505 P. 2d 710.)

In this case the clean hands doctrine had been specifically raised as an affirmative defense in the defendants' answer. That defense was the basis of the defendants' motion to dismiss. The clean hands doctrine is based upon the maxim of equity that he who comes into equity must come with clean hands. The clean hands doctrine in substance provides that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct. It is difficult to formulate a general statement as to what will amount to unclean hands other than to state it is conduct which the court regards as inequitable. Like other doctrines of equity, the clean hands maxim is not a binding rule, but is to be applied in the sound discretion of the court. The clean hands doctrine has been recognized in many Kansas cases. (*Brooks v. Weik,* 114 Kan. 402, 219 Pac. 528; *Scott v. Southwest Grease & Oil Co.,* 167 Kan. 171, 205 P. 2d 914; *Browning v. Lefevre,* 191 Kan. 397, 381 P. 2d 524; *Seal v. Seal,* 212 Kan. 55, 510 P. 2d 167; and *Anderson v. Anderson,* 214

Kan. 387, 520 P. 2d 1239.) The application of the clean hands doctrine is subject to certain limitations. Conduct which will render a party's hands unclean so as to deny him access to a court of equity must be willful conduct which is fraudulent, illegal or unconscionable. (*Seal v. Seal,* supra.) Furthermore the objectionable misconduct must bear an immediate relation to the subject-matter of the suit and in some measure affect the equitable relations subsisting between the parties to the litigation and arising out of the transaction. (*Brooks v. Weik,* supra.) Stated in another way the misconduct which may justify a denial of equitable relief must be *related* misconduct rather than *collateral* misconduct arising outside the specific transaction which is the subject-matter of the litigation before the court.

It should also be emphasized that in applying the clean hands maxim, courts are concerned primarily with their own integrity. The doctrine of unclean hands is derived from the unwillingness of a court to give its peculiar relief to a suitor who in the very controversy has so conducted himself as to shock the moral sensibilities of the judge. It has nothing to do with the rights or liabilities of the parties. In applying the unclean hands doctrine, courts act for their own protection, and not as a matter of "defense" to the defendant. (*Gaudiosi v. Mellon,* [C. A. 3rd] 269 F. 2d 873.)

The plaintiffs Green on this appeal argue that a defendant cannot invoke the protection of the clean hands maxim unless he has suffered from the misconduct of the plaintiff. They argue that here the defendants Higgins participated in the claimed misconduct and that any injury suffered would be to third parties and not to the defendants themselves. There is authority to support the plaintiffs' position. (*Batesville Truck Line, Inc., v. Martin,* 219 Ark. 603, 243 S. W. 2d 729 [1951]; *Langley v. Devlin,* 95 Wash. 171, 163 Pac. 395 [1917]; and other cases to the same effect cited in the annotation in 4 A. L. R. 44.) In our judgment such an interpretation of the clean hands doctrine does not accord with its principal purpose. A court may refuse its relief to the plaintiff though the defendant himself participated in the misconduct, not because it is a privilege of such a defendant, but because the court refuses to lend its aid to either party to such a transaction. The best-reasoned cases hold that the maxim applies, even though the misconduct of the plaintiff has not injured anyone and even though the defendant himself was a participant in the misconduct. See for

example *Gaudiosi v. Mellon,* supra; *Brown v. Brown et al.,* 66 Conn. 493, 34 A. 490; and McClintock on Equity, 2d Ed., § 26.

With these basic principles in mind we turn now to the undisputed facts in this case to determine whether or not the district court abused its discretion in denying relief to both the plaintiffs and the defendants. Here all parties have conceded that the following facts are true: That the contract entered into between the parties on April 21, 1971, was dated June 2, 1971, in order to deprive Lienna McCulley of her right to a sales commission which she had previously obtained through contract; that a fictitious contract was prepared by which it appeared the Higgins agreed to sell the real estate to Medallion Investment Properties, Inc. for $40,000; that the fraudulent contract was prepared at the suggestion of the plaintiff, Philip A. Green, and was submitted by Higgins to Brown and Gilman in order to deprive them of their right of first refusal to purchase the property at a proposed price. It simply cannot be denied that the plaintiffs Green actively and willfully participated in fraudulent and unconscionable activities to obtain title to the land and to defeat various legal rights held by third parties. The misconduct involved here was directly related to the subject-matter of the litigation and must be classified as related misconduct, not collateral misconduct. Under all the facts and circumstances we cannot say that the trial court abused its discretion in denying relief to both the plaintiffs and defendants by reason of the clean hands doctrine.

The judgment of the trial court is affirmed.

Fromme, J., not participating.