NOT DESIGNATED FOR PUBLICATION

No. 113,984

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

COREFIRST BANK & TRUST,
*Appellee*,

v.

JOHN T. TUCKNESS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Opinion filed April 8, 2016. Affirmed.

*John Tuckness*, appellant pro se.

*R. Patrick Riordan* and *Erin A. Beckerman*, of Riordan, Fincher, Munson & Sinclair, PA, of Topeka, for appellee.

Before ARNOLD-BURGER, P.J., GREEN and LEBEN, JJ.

*Per Curiam*: At its core, this is a simple case. John T. Tuckness, who had a checking account at CoreFirst Bank & Trust, overdrew his account by $217 and failed to repay the bank. Around the same time, and for reasons unrelated to the overdraft, CoreFirst decided to close Tuckness' checking account. The bank sued Tuckness and recovered the amount of the overdraft plus a $29 overdraft fee and $32 in attorney fees.

Although Tuckness has not disputed at any point in this litigation that he overdrew his account, he has appealed—claiming that the bank's recovery should be reduced to account for its fault under comparative-negligence principles and that the bank should be barred from recovering anything due to wrongful conduct. But Tuckness' allegations are unsupported and unrelated to the overdraft, so we affirm the district court's judgment in favor of CoreFirst.

FACTUAL AND PROCEDURAL BACKGROUND

The case was tried to a district court judge, and we must accept her factual findings to the extent that they are supported by substantial evidence. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). But the key facts in this case are not disputed. Tuckness opened an account at CoreFirst in January 2006. The checking-account agreement provided that Tuckness would pay any overdrafts on the account, along with an overdraft fee. On December 4, 2013, Tuckness' checking account contained around $82.94. Either that day or the next, Tuckness cashed a check for $300 from that account. This check overdrew Tuckness' account, leaving a negative balance of $217.06, which he failed to repay. CoreFirst also charged a $29.00 overdraft fee.

The checking-account agreement also granted CoreFirst the right to close the checking account at any time for any reason. The bank seems to have decided to close Tuckness' account after an incident between Tuckness and one of the bank's female tellers (not fully described in the record on appeal). CoreFirst wrote a letter to Tuckness dated December 4, 2013, stating that his account was going to be closed. A bank executive testified that he had notified the bank's branch managers (but not all 370 bank employees) that, starting December 4, Tuckness could conduct bank business only with one particular male employee. Despite this notice, Tuckness was able to cash the $300 check that overdrew his account without interacting with the designated employee.

2

Tuckness stated that he received the notice about his account being closed on December 6 or 7. CoreFirst then closed Tuckness' account on December 18, 2013.

In addition to the account on which this check was drawn, Tuckness also had another account at the bank. That account had $29.54 in it, and the bank also closed that account. The bank exercised its right to offset that amount against what Tuckness owed in his other account, leaving a net negative balance of $216.52.

Because Tuckness failed to repay this sum, CoreFirst filed a lawsuit to recover the $216.52 that Tuckness owed. While the case was ongoing, the district court mistakenly placed it on the dismissal docket for failure to prosecute. CoreFirst filed a motion informing the district court of the error, and the case was removed from the dismissal docket. Tuckness filed numerous pleadings objecting to the removal from this dismissal docket, including an appeal to this court (dismissed as premature). The parties engaged in limited discovery, or collection of evidence, which Tuckness vigorously attempted to expand throughout the case. The district court ruled in favor of some of Tuckness' discovery requests but did not grant everything Tuckness asked for because he could not demonstrate how it was relevant to the overdraft. Eventually, the district court held a bench trial and determined that Tuckness owed the bank $216.52 plus interest and $32.48 in attorney fees (15% of the recovery, as requested by CoreFirst and as limited by the Uniform Consumer Credit Code, see K.S.A. 16a-2-507).

Tuckness then appealed to this court.

ANALYSIS

I. *Comparative Negligence Does Not Apply Here.*

Tuckness argues that he is not responsible for the overdraft because the bank was comparatively negligent and created the situation that led to the overdraft. This presents a question of law (*i.e.*, whether comparative negligence applies to the bank's claim), and we review questions of law independently, without any deference to the district court's conclusion. See *Gannon*, 298 Kan. at 1175-76.

In Kansas, in negligence cases (where comparative-negligence concepts are applied), a person can recover damages only if he or she was less at fault than the person being sued. K.S.A. 60-258a(a). Courts rarely apply this doctrine outside of tort cases (or cases about liability for loss or harm) involving death, personal injury, or property damage. *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, Syl. ¶ 4, 666 P.2d 192 (1983) ("If the result is simple economic loss, liability and damages are governed by breach of contract principles."); *Broce-O'Dell Concrete Products, Inc. v. Mel Jarvis Constr. Co.*, 6 Kan. App. 2d 757, 759, 634 P.2d 1142 (1981) ("No case applies the [comparative negligence] statute to purely economic loss resulting from a breach of contract."). Essentially, as the district court correctly noted, the concept of comparative negligence doesn't apply to contract disputes with purely economic damages. 6 Kan. App. 2d at 759. Here, the bank simply sought to enforce the underlying contract it had with its depositor.

The district court also correctly concluded that this case doesn't involve a tort, so comparative negligence doesn't apply. This case doesn't have any claims related to death, personal injury, or property damage—CoreFirst simply sued Tuckness to recover money that it's entitled to under the checking-account agreement. Tuckness has admitted at various points in this litigation that the only issue is whether he owes the bank for the

overdraft, and he did not bring any valid counterclaims, despite his constant and vague assertions that the bank was involved in some kind of wrongdoing. This simply is not a tort case, so comparative negligence doesn't apply.

II. *The Clean-Hands Doctrine Does Not Bar CoreFirst's Recovery.*

Tuckness also argues that the bank cannot recover because of what's known as the clean-hands doctrine. The district court made a negative factual finding that Tuckness hadn't shown enough evidence to establish that the bank had unclean hands. We must accept a district court's negative factual finding unless the appellant proves either that the district court arbitrarily disregarded undisputed evidence or that some extrinsic consideration such as bias, passion, or prejudice affected the finding. *Hill v. Dillon Companies, Inc.*, 286 Kan. 777, 781, 189 P.3d 508 (2008).

The clean-hands doctrine applies to suits brought in equity, and CoreFirst does not object to application of the doctrine. Although its petition, which set forth its claims against Tuckness, did not specifically mention equity as a basis for the claim, CoreFirst arguably sued Tuckness in equity because the bank wanted Tuckness to do what he agreed to do under the checking-account agreement—pay any overdrafts. See *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 343, 757 P.2d 251 (1988) (action for specific performance is an action in equity), *disapproved on other grounds by Bair v. Peck*, 248 Kan. 824, 811 P.2d 1176 (1991). While the action might more properly be characterized as one for damages for breach of contract rather than one for specific performance, see *Duffin v. Patrick*, 216 Kan. 81, 82, 530 P.3d 1230 (1975); Restatement (Second) of Contracts § 345(a), (b) (1981), the bank has neither made that argument nor objected to the application of the clean-hands doctrine. Under that doctrine, a person cannot obtain court-ordered relief if he or she has also been guilty of inequitable conduct. *Green v. Higgins*, 217 Kan. 217, 220, 535 P.2d 446 (1975). Essentially, this doctrine comes from the straightforward idea that someone who has behaved unfairly in a

transaction shouldn't benefit from that misbehavior. 217 Kan. at 221. A party has "unclean hands" if it behaves in a "fraudulent, illegal or unconscionable" manner that is somehow related to the subject of the case. 217 Kan. at 221.

Tuckness has a variety of arguments about why CoreFirst had unclean hands and should be responsible for his overdraft. First, Tuckness argues that CoreFirst should have given him notice that it was closing his account and that this lack of notice somehow caused the overdraft. But a bank executive testified that CoreFirst can generally close a checking account for any reason, without notice. The same executive noted that there was one exception: CoreFirst must give 30 days' notice before closing an account that contains Social Security deposits. Tuckness misconstrues the testimony about this exception to suggest that he was entitled to 30 days' notice before the bank closed his account. But Tuckness didn't have Social Security payments deposited into his account (nor does Tuckness allege that he did), so that exception doesn't apply here. The bank executive's testimony was uncontroverted: under the checking-account agreement, CoreFirst could close an account without notice. None of the provisions of the Uniform Commercial Code or the Uniform Consumer Credit Code that Tuckness cites in his brief have any bearing on CoreFirst's ability to close his account at any time and for any reason. That Tuckness overdrew his checking account on December 4 is wholly unrelated to CoreFirst closing his account on December 18.

Second, Tuckness repeatedly states that his account was already closed when he cashed the $300 check, so the bank shouldn't have let him cash the check. This is simply untrue; the account summary presented at trial showed that the account wasn't actually closed until December 18.

Third, Tuckness argues that the bank should have checked his account balance before allowing him to cash the $300 check. But Tuckness provides no authority for the proposition that banks must check a customer's account before cashing a check drawn on

6

that account. See *State v. Tague*, 296 Kan. 993, 1001-02, 298 P.3d 273 (2013) ("[A]n argument that is not supported with pertinent authority is deemed waived and abandoned."); Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) (appellant's brief must include "[t]he arguments and authorities relied on").

Fourth, Tuckness argues that CoreFirst had unclean hands because it failed to notify all bank personnel on December 4, 2013, that Tuckness' account was going to be closed. It's true that only branch managers were notified, not all bank personnel. The district court found that, at most, CoreFirst was "maybe careless" in not notifying all bank personnel of the impending account closure. But carelessness is not fraudulent, illegal, or unconscionable conduct—the type of conduct that creates unclean hands. See *Green*, 217 Kan. at 221. Tuckness also fails to show how this carelessness is related to his overdraft; even if bank personnel knew that his account would be closed soon, it was still open when he presented his check.

Fifth, Tuckness argues that his overdraft insurance should have covered the overdraft. But this is the first mention of overdraft insurance in this case; Tuckness did not raise or discuss overdraft insurance at trial, nor did he present any proof that he had such insurance or any evidence demonstrating what that insurance might cover. Tuckness' failure to raise this issue in the district court precludes raising it now. See *State v. Williams*, 298 Kan. 1075, Syl. ¶ 4, 319 P.3d 528 (2014) (litigant must explain why an issue not raised below should be heard at the appellate level); *Tague*, 296 Kan. at 1001-02.

Last, Tuckness alleges that the district court was biased in favor of CoreFirst, impaired his ability to make his case, and generally treated him unfairly. These bald assertions aren't supported by the record. Tuckness argued for expansive discovery (going back to at least 2006) at the district court, but he wasn't able to demonstrate that what he was asking for was relevant, so the district court limited the discovery to the past

year. The record doesn't show anything unreasonable or unfair in the discovery process. Tuckness' desire to independently investigate CoreFirst based on problems that he alleges "have been ongoing for more than 15 years" was not at all related to the limited issue being tried in the district court—whether Tuckness owed money to CoreFirst because he had overdrawn his checking account.

Tuckness has also made much of the fact that this case was briefly and accidentally placed on a dismissal docket during discovery. But as the district court noted, this clerical error didn't affect the rights of either party. The case was ongoing and never should have been placed on the dismissal docket in the first place, so taking it off the dismissal docket was appropriate.

In sum, none of Tuckness' allegations of unfairness have any support in the record. He has not shown evidence of any bias, passion, or prejudice, nor has he shown that the district court arbitrarily disregarded undisputed evidence. See *Hill*, 286 Kan. at 781. Tuckness overdrew his checking account. Around the same time, but for unrelated reasons, CoreFirst decided to close Tuckness' accounts, as it was entitled to do. Tuckness received money from CoreFirst that didn't belong to him, and he must pay the bank back.

We affirm the district court's judgment.