NOT DESIGNATED FOR PUBLICATION

No. 127,767

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BLACK JACK HILLS, INC.,
*Appellant*,

v.

LUKE WEBSTER, Individually and as Administrator of the Estate of BILLIE WEBSTER, and
BRITY PUNZAL,
*Appellees*.

MEMORANDUM OPINION

Appeal from Cowley District Court; CHRISTOPHER SMITH, judge. Oral argument held May 20, 2025. Opinion filed July 18, 2025. Affirmed.

*Joseph A. Knopp*, of Knopp, Biggs & Renz P.A., of Manhattan, for appellant.

*Christopher A. Rogers*, of Winfield, for appellees.

Before MALONE, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: When Billie and Joni Webster divorced, Billie was awarded a life insurance policy on Billie's life that was owned by Black Jack Hills, Inc.—a company that Joni owned—as part of the division of property. Unfortunately, Billie died soon after the divorce, before Joni and Black Jack Hills transferred ownership of the policy to him. The designated beneficiary of the policy was Black Jack Hills, and the beneficiary was not changed before Billie's death. Black Jack Hills and Billie's estate filed competing claims to the death benefits from the life insurance policy. The district court granted summary judgment to Billie's estate on equitable grounds, finding that Black Jack Hills

1

had no lawful claim to the death benefits and that it should not be permitted to benefit from Joni's failure to transfer ownership of the policy as had been ordered in the divorce.

Black Jack Hills appeals arguing the district court's ruling is flawed in several respects: (1) The district court ignored statutory and caselaw authority in concluding Black Jack Hills had no rights to the death benefits from the policy; (2) the district court erred in applying a constructive trust theory and equitable principles to rule for the estate; and (3) the district court erred in granting summary judgment despite material disputed facts about the transfer of ownership of the policy. After thoroughly reviewing the record on appeal, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Joni and Billie Webster married in 2008. Together they ran a business called Black Jack Hills, an event venue and catering center. Joni had owned and operated the business before the marriage, but together they built the business over the following years. They lived together at a house that was adjacent to the business.

In 2009, Joni and Billie decided to take out life insurance policies on each other through Black Jack Hills. This type of policy is sometimes called key man insurance, a policy intended to protect an employer in the event of an employee's death. Ralph Wild, an insurance agent with New York Life Insurance Company, helped them purchase the policies. The policy they ultimately chose for Billie was a whole life policy that would accumulate cash value upon the payment of the premiums and had a death benefit of $200,000. Black Jack Hills was the owner of the policy that covered Billie.

Joni filed a petition for divorce from Billie in 2019. The divorce was contested and the district court ultimately ordered that Joni would receive the marital residence, the Black Jack Hills business, and the land on which the business is located. Based on the

2

increase in value of the properties and the business, the district court ordered equalization payments for Billie, including cash payments of $17,000 and the life insurance policy on Billie's life owned by Black Jack Hills, which had a cash surrender value of about half of the assessed increase in value to the properties. The divorce decree stated: "The court sets aside the above-referenced life insurance policy to [Billie] as a portion of his share of the increased value of the above-described real estate." The decree also stated: "The parties shall cooperate and execute any documents necessary to make all transfers of property ordered herein." The district court announced its ruling from the bench on August 28, 2020, but the divorce decree was not filed until October 21, 2020.

To transfer ownership of the policy from Black Jack Hills to Billie, New York Life required the policy owner to execute a transfer of ownership form signed both by the owner of the policy (or its agent) and the party to whom ownership will be transferred. In other words, Joni—acting as an agent of Black Jack Hills—was required to complete and sign the requisite form, have it signed by Billie, and then send the form for approval to New York Life. According to the insurance agent, Wild, because Billie was not the owner of the policy, he could not transfer ownership.

On October 6, 2020, Wild sent Joni the necessary documents with a letter explaining the process. At some point, Joni signed the transfer of ownership form and returned it to Wild—but she did not sign it correctly. She failed to sign the form as a corporate officer of Black Jack Hills and she failed to date her signature. Wild passed the transfer of ownership form along to Billie by November 10. When Wild delivered the transfer of ownership form to Billie for his signature, Billie told him that he intended to cash in the policy, so Wild sent him several other forms that would be required for him to do so. Billie never returned the cash value forms to Wild. Wild acknowledged that Billie could not have cashed in the policy or changed its beneficiary until ownership of the policy was transferred to him by Black Jack Hills and accepted by New York Life.

3

Unfortunately, Billie died unexpectedly on November 14, 2020, four days after speaking to Wild. Wild received the transfer of ownership form in the mail two days later; it had been signed and dated by Billie on November 10. A box on the form to change the beneficiary designation to the new owner was unchecked. But according to an interpleader complaint later filed by New York Life, the insurance company "determined that the Transfer of Ownership form dated November 10, 2020 was not in good order and therefore did not process the change of ownership." At the time Billie died, the owner and designated beneficiary of the life insurance policy was Black Jack Hills.

Following Billie's death, Luke Webster, his son, was appointed the administrator of his estate. On November 25, 2020, Luke's attorney sent a letter to Wild asserting a claim to the death benefits from the policy because the policy had been set aside to Billie in the divorce. Several months later, Joni, acting as president of Black Jack Hills, asserted a claim to the death benefits because Black Jack Hills was still designated as the beneficiary. Presented with the conflicting claims, New York Life filed an interpleader action in federal court, but a month later—by agreement of the parties—the case was dismissed and New York Life paid half the death benefits each to Black Jack Hills and Billie's estate, to be held in trust pending judicial resolution of their conflicting claims.

On December 2, 2021, Black Jack Hills petitioned for declaratory relief against Billie's estate, Luke, and Brity Punzel, another heir, (the respondents) seeking an order that it was the rightful beneficiary of Billie's life insurance policy and entitled to the "proceeds of the policy in the amount of $198,712.90." The respondents counterclaimed, alleging that Joni had failed to transfer the life insurance policy as ordered in the divorce and seeking an order that the death benefits rightfully belonged to Billie's estate.

In May 2023, following completion of discovery, the parties filed competing motions for summary judgment, both claiming the death benefits from the life insurance policy. Black Jack Hills argued that under K.S.A. 23-2802(d), it should receive the death

4

benefits, regardless of whether ownership of the policy was transferred to Billie, because it was still the designated beneficiary of the policy at the time of Billie's death.

The respondents' motion attached an affidavit from Laura Matyja, New York Life corporate vice president, stating that only a policy owner can change the beneficiary of a policy and that Black Jack Hills was the owner of the policy at issue at the time of Billie's death. The respondents argued that Billy had no authority to transfer ownership of the policy by himself and that Joni and Black Jack Hills' inaction in transferring the policy to Billie prevented him from either cashing in the policy or changing its beneficiary. They also argued that Billie was entitled to ownership of the policy under the divorce court's division of property, that Black Jack Hills' interest in the policy was extinguished, and that Black Jack Hills' retention of the death benefits constituted unjust enrichment.

On February 21, 2024, the district court issued its written ruling denying Black Jack Hills' motion for summary judgment and granting summary judgment for the respondents. The district court recited several findings of uncontroverted facts:

- Black Jack Hills was the owner and sole beneficiary of the policy.
- As part of the property settlement in Joni and Billie's divorce, Billie was awarded ownership of the policy.
- Black Jack Hills and Joni—as its sole owner, director, officer, and stockholder—never provided New York Life with a properly completed form to transfer ownership of the policy to Billie as ordered.
- Under the terms and conditions of the policy, Billie was without any legal authority to transfer the policy or change its beneficiaries until there was a proper transfer of ownership completed by Black Jack Hills and Joni.

The district court explained that although Billie was awarded the policy on the date the divorce court pronounced its decision, Black Jack Hills and Joni had the

responsibility to "effectuate the necessary and correct paperwork to New York Life to make that transfer of ownership valid." And because the transfer of ownership was rejected by New York Life, Billie—through no fault of his own—was powerless to cash in the policy or change its beneficiary before his death. The district court found that "Joni Webster breached her court ordered duty to transfer the policy to Billie Joe Webster." The district court concluded that Black Jack Hills and Joni did not "have a lawful claim to the death benefits" under the equitable principles of unjust enrichment and the clean hands doctrine. The district court ordered Black Jack Hills to transfer the portion of the death benefits it was holding, along with interest, to Billie's estate under a constructive trust theory. Black Jack Hills timely appealed the district court's judgment.

ANALYSIS

Black Jack Hills argues the district court erred in granting summary judgment for the respondents. Although its brief identifies five issues, we group the arguments into three broad claims: (1) The district court ignored statutory and caselaw authority in concluding Black Jack Hills had no rights to the death benefits from the policy; (2) the district court erred in applying a constructive trust theory and equitable principles to rule for the estate; and (3) the district court erred in granting summary judgment despite material disputed facts about the transfer of ownership of the policy.

The respondents maintain that the district court properly granted summary judgment and that Black Jack Hills ignores the crux of the district court's ruling—that Black Jack Hills' failure to transfer ownership of the policy prevented Billie from taking any action on the policy, whether it be changing the designated beneficiary or cashing in the policy, and it should not be allowed to benefit from its inaction. The respondents argue that the district court correctly ruled that awarding the death benefits to Black Jack Hills would constitute unjust enrichment and there were no disputed facts precluding summary judgment. Alternatively, the respondents argue that Black Jack Hills' claim to

6

the insurance proceeds is barred by K.S.A. 59-2239, the Kansas nonclaim statute, because it failed to file a timely claim against Billie's probate estate.

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021).

*Did the district court ignore statutory and caselaw authority?*

Black Jack Hills' first argument rests on K.S.A. 23-2802(d), which provides that a divorce decree shall provide for any changes in beneficiary designation on "[a]ny insurance or annuity policy that is owned by the parties." The statute also states: "Nothing in this section shall relieve the parties of the obligation to effectuate any change in beneficiary designation by the filing of such change with the insurer or issuer in accordance with the terms of such policy." K.S.A. 23-2802(d). Black Jack Hills argues that it is entitled to the death benefits because it was still listed as the beneficiary of the policy at the time of Billie's passing. It cites *Cincinnati Life Ins. Co. v. Palmer*, 32 Kan. App. 2d 1060, 94 P.3d 729 (2004), as being "directly on point with the fact[s] of this case."

The respondents assert that neither K.S.A. 23-2802(d) nor the *Cincinnati Life* case apply to the facts here. They point out that the policy at issue was owned by Black Jack

7

Hills, not by either party to the divorce decree. They maintain that Black Jack Hills' failure to transfer ownership of the policy to Billie prevented him from taking any action to change the designated beneficiary.

Black Jack Hills relies extensively on the *Cincinnati Life* case. In that case, after a divorce, a husband and wife were each awarded their own life insurance policies in the division of property. But the district court did not designate new beneficiaries of the policies, it simply ordered that each party owned their own policy. Three years after the divorce, husband died without having changed the beneficiary of his policy. Facing competing claims to the proceeds from husband's policy from ex-wife (who was still listed as his policy's designated beneficiary) and husband's mother (who was listed as its contingent beneficiary), the district court awarded the proceeds to his mother. The district court's ruling was based in part on conversations husband had with his insurance agent before his death suggesting that he had assumed that his ex-wife had been removed as the beneficiary under the terms of the property settlement agreement.

This court reversed, finding the 1996 statutory revision to K.S.A. 60-1610(b)(1), which contained language almost identical to the current K.S.A. 23-2802(d), required that "*any* change in beneficiary on any insurance or annuity policy to be specified in the divorce decree, and absent such an express provision in the decree, an active beneficiary designation of either spouse at the time of the divorce is not changed." 32 Kan. App 2d at 1064-65. This court reasoned the practical result of its construction of the statute may seem harsh, "but it serves to avoid difficult and protracted proceedings to ascertain intent of the parties, often where one of the parties is deceased." 32 Kan. App. 2d at 1065.

Based on the analysis in *Cincinnati Life*, Black Jack Hills asserts that "Kansas law affirmatively states that nothing in the statutes allows a court to relieve the parties of the obligation to effectuate any change in the beneficiary designation by the filing of such change with the insurer or issuer in accordance with the terms of such policy." Black Jack

8

Hills contends the result in this case should be the same—because the beneficiary of Billie's policy was not changed by the divorce decree, or by Billie at any time before his death, Black Jack Hills was entitled to receive the death benefits. However, Black Jack Hills' reliance on *Cincinnati Life* is misplaced.

The crucial difference between this case and *Cincinnati Life,* along with the other cases cited by Black Jack Hills, is that Billie never owned the life insurance policy at issue. Black Jack Hills was always the policy's owner. And due to this ownership structure, Billie would not have had the authority to change the policy's beneficiary designation or cash in the policy until Black Jack Hills (through its owner and agent, Joni) transferred ownership of the policy to him, which never happened. While Billie was entitled to ownership of the policy under the terms of the divorce decree, he never received that ownership in the months between the divorce and his death.

Because neither Billie nor Joni was the owner of the policy, the statute dealing with the division of property that Black Jack Hills cites is not even applicable. While K.S.A. 23-2802(d) provides that a divorce decree "shall provide for any changes in beneficiary designation," it expressly applies to policies "owned by the parties." Unlike the husband in *Cincinnati Life* who owned the policy in question and had the ability to designate a new beneficiary but never did so in three years after the divorce, Billie was powerless to make any changes to the policy before his death.

We will address two more points Black Jack Hills raises on this issue. First Black Jack Hills contends that the district court improperly examined the intent of the parties in deciding that Billie's estate should receive the death benefits from the policy. While the district court may have considered the deposition testimony from Wild about Billie's intention to cash in the policy, these intentions did not factor into its summary judgment ruling. Rather, the district court found that Joni and Black Jack Hills' inaction in transferring ownership of the policy prevented Billie from taking any action on the

9

policy—regardless of what his intentions were after he received ownership of it. From the district court's perspective, the salient fact was not Billie's intent but the equitable consideration that Black Jack Hills (and Joni) had prevented Billie from taking any action with the policy that he was awarded in the divorce and should not be permitted to benefit from their failure to follow the divorce court's orders.

Second, Black Jack Hills repeatedly states that Billie could have changed the beneficiary designation of the policy. This is the core premise on which it rests its claim to receive the death benefits. Black Jack Hills contends that the onus was on Billie to change the beneficiary designation and, because he did not do so, Black Jack Hills was entitled to receive the death benefits because it was the designated beneficiary when Billie died. But both Wild and Matyja, the corporate vice president of New York Life, clarified that only a policy owner can change the beneficiary of a policy or transfer ownership. And it is undisputed that ownership of the policy was not transferred to Billie before his death. Joni admitted this fact in her deposition, agreeing that Billie could not have changed the beneficiary of the policy until its ownership was transferred to him. For all these reasons, we conclude the district court's summary judgment ruling was not contrary to established caselaw or the provisions of K.S.A. 23-2802(d).

*Did the district court err in applying equitable principles to rule for the estate?*

Next, Black Jack Hills contends that the district court erred by basing its ruling on the equitable grounds of unjust enrichment and the clean hands doctrine. Black Jack Hills similarly asserts that the court "erred in the application of a 'constructive trust theory.'" Although the district court referenced both the equitable doctrine of clean hands and unjust enrichment, it is not immediately clear which was the crux of the court's order— either way, the district court's decision boils down to its conclusion that Black Jack Hills had no legal interest in the policy and should not be permitted to benefit from its failure to follow the divorce court's order dividing Joni and Billie's marital property.

10

Claims for unjust enrichment arise in equity. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 176, 910 P.2d 839 (1996). A constructive trust is a remedy a court may use to rectify unjust enrichment. *Nelson v. Nelson*, 288 Kan. 570, 579, 205 P.3d 715 (2009). "'Where a person holding title to property is subject to an *equitable duty* to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.'" 288 Kan. at 579 (quoting Restatement [First] of Restitution § 160 [1937]). To succeed on a claim for unjust enrichment, a party must show (1) that they have conferred a benefit upon another party; (2) that the other party was aware of and retained the benefit; and (3) the circumstances surrounding the benefit make it inequitable for the other party to retain the benefit. See, e.g., *Haz-Mat Response, Inc.*, 259 Kan. 166, Syl. ¶ 6. Although the framework of unjust enrichment is typically applied to contractual disputes, because of its equitable nature it may be decided independently of any contractual relationship. See *Hurtig v. Mattox*, No. 117,544, 2017 WL 6542803, at *5 (Kan. App. 2017) (unpublished opinion) (noting that "even when no contract or statutory remedies exist, under appropriate circumstances an aggrieved person may seek the equitable remedy of unjust enrichment").

The district court also couched its summary judgment ruling on the clean hands doctrine. The clean hands doctrine is based on the principle that "no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct." *Fuqua v. Hanson*, 222 Kan. 653, 656-57, 567 P.2d 862 (1977). The doctrine should only be applied to bar relief where a party has acted fraudulently, illegally, or unconscionably, and is appropriate only when the misconduct "bear[s] an immediate relation to the subject-matter of the suit and in some measure affect[s] the equitable relations subsisting between the parties to the litigation and arising out of the transaction." *Green v. Higgins*, 217 Kan. 217, 220-21, 535 P.2d 446 (1975).

Under Kansas law, the application of an equitable doctrine rests within the sound discretion of the district court. *Consolver v. Hotze*, 306 Kan. 561, 568, 395 P.3d 405

11

(2017). In considering whether a district court abused its discretion, this court looks at (1) whether the factual basis of its decision is supported by substantial competent evidence; (2) whether the court has correctly identified and properly applied the applicable legal principles; and (3) whether the decision is reasonable. See, e.g., *State v. Gonzalez*, 290 Kan. 747, 756, 234 P.3d 1 (2010). As to the district court's factual findings, substantial evidence is evidence that a reasonable person might accept as sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). This court reviews the district court's legal conclusions from those facts de novo. See *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017) ("The panel's conclusions of law based on those findings [of fact] are subject to our unlimited review.").

Turning to the equitable doctrines on which the district court based its decision, we must determine whether the district court's decision granting summary judgment to Billie's estate was unreasonable. To summarize the relevant facts, the district court found: (1) the life insurance policy was awarded to Billie in the divorce on August 28, 2022; (2) Joni and Black Jack Hills failed to transfer ownership of the policy to Billie as ordered by the court; and (3) Billie was unable to change the beneficiary of the policy or otherwise control it because he was not the owner of the policy.

Based on these undisputed facts, the district court found that Black Jack Hills had no legal interest in the policy and could not be permitted to benefit from its own failure to promptly transfer ownership as ordered and impressed a constructive trust on the death benefits for the benefit of Billie's estate. This was the focus of the district court's ruling—Black Jack Hills could not claim a windfall of death benefits that it had no right to receive simply because it did not transfer ownership to Billie in time for him to take action on the policy. It cannot be said that this decision was unreasonable.

The facts here are far different than the facts in *Cincinnati Life*, where the husband received his own life insurance policy in a divorce and died three years later without

12

changing the beneficiary. The policy at issue here was owned by Black Jack Hills and was awarded to Billie in the divorce decree to make the property division fair and equitable. The divorce decree was filed and no timely appeal was taken, so the judgment became final. Joni was transferring ownership of the policy to Billie, but the process was not completed before Billie died less than three months after the divorce hearing and only a few weeks after the decree was filed. Black Jack Hills still owned the policy when Billie died and he could not have possibly changed the beneficiary until after he owned the policy. It would have been an inequitable windfall to allow Black Jack Hills—and Joni—to retain the death benefits from the policy under these circumstances. And considering the fact that the policy was purchased to protect Black Jack Hills in the event of a key employee's death and Billie was no longer an employee of the company when he died, allowing Black Jack Hills to receive the death benefits in this situation would have been even more inequitable. The district court properly applied the equitable principles of unjust enrichment in awarding the death benefits to Billie's estate.

We do not need to reach the district court's ruling under the clean hands doctrine. But we observe that application of that doctrine usually requires a finding of bad faith or fraudulent or unconscionable conduct. See *Green*, 217 Kan. at 220-21. It is unlikely that the uncontroverted facts support that finding here. Joni and Black Jack Hills were transferring ownership of the policy to Billie as ordered by the district court and presumably would have completed the task within a reasonable time except for Billie's unexpected and sudden death. Under these circumstances, it would be difficult to find that they were guilty themselves of any inequitable conduct.

In sum, the district court's factual findings were supported by substantial competent evidence, the district court correctly identified and properly applied the equitable principles of unjust enrichment to the facts before the court, and the district court's decision was reasonable under all the circumstances. Black Jack Hills fails to show the district court erred in applying equitable principles to rule for the estate.

13

*Did the district court err in granting summary judgment despite material disputed facts?*

Finally, Black Jack Hills contends that the district court relied on a disputed material fact about whether the transfer of ownership of the life insurance policy was effective before Billie's death. A review of the record shows that there is no actual dispute about this fact. As noted above, New York Life never accepted the transfer of ownership form that Joni and Billie signed—that is, an effective transfer of ownership never occurred. And according to Joni, Wild, and Matyja, the New York Life corporate vice president, Black Jack Hills remained the owner of the policy when Billie died. Black Jack Hills submitted a competing affidavit from Matyja to support its summary judgment motion that pointed out how Billie did not check the box on the transfer of ownership form to change the beneficiary designation to the new owner and without a change of beneficiary, ownership of the policy did not matter. But this information aside, New York Life determined that the transfer of ownership form signed by Joni and Billie was not in good order, and the insurance company did not accept the form for any lawful purpose.

The parties filed competing motions for summary judgment, with both parties claiming the facts were undisputed and judgment should be rendered as a matter of law. Although Black Jack Hills now disputes the legal effect of some of the documents before the district court, there were no disputed material facts precluding summary judgment. Based on the record presented for our review, we conclude the district court did not err in granting summary judgment for the respondents and ordering the death benefits from the policy to be paid to Billie's estate. We need not address the respondents' alternative argument that Black Jack Hills' claim to the insurance proceeds is barred by K.S.A. 59-2239 because it did not file a timely claim against Billie's estate.

Affirmed.

14